**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARMEN A. SEXTON,<br><br>                    Plaintiff,<br><br>          v.<br><br>NEW JERSEY DEPARTMENT OF CORRECTIONS, et al.,<br><br>                    Defendants. | Civil Action No. 21-20404 (GC) (DEA)<br><br>**OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon five (5) Motions to Dismiss (ECF Nos. 19, 38, 45, 46, 47) Plaintiff's Second Amended Complaint (ECF No. 9). The Court has carefully considered the parties' written submissions and decides the matter without oral argument, pursuant to Federal Rule ("Rule") of Civil Procedure 78(b) and Local Rule 78.1(b). For the reasons stated herein, the Motions to Dismiss are **GRANTED.**[1]

### I.    BACKGROUND

Plaintiff Carmen Sexton has been employed by the New Jersey Department of Corrections since December 23, 1995.[2] (ECF No. 9 ¶ 1.) Plaintiff asserts a myriad of claims such as: malicious prosecution, a due process violation; violations under the Civil Rights Act of 1964, 42 U.S.C. §

---

[1]    The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

[2]    On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).

2000 *et seq.*, 42 U.S.C. §§ 1982, 1983, 1985, 1986, and 1998-2000, the Americans with Disabilities

Act of 1990, 42 U.S.C. § 12100 *et seq.*; and New Jersey state law claims under the New Jersey

Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1 *et seq.*; the New Jersey Civil

Rights Act, N.J. Stat. Ann. § 10:6-2(a); and N.J. Stat. Ann. § 11A:2-24(a).

Plaintiff brings suit against various entities and individuals such as: the New Jersey

Department of Corrections and employees David Borg, Steven Johnson, Sean Abrams, Mervin

Ganesh, Leila Lawrence, Victoria Kuhn, Marie Mills-Rogers, Tamara Rudrow Steinberg, Michael

Ptaszenski, and Richard DeFazio (collectively, "NJDOC Defendants"); the New Jersey Treasury,

Division of Risk Management and employee Naqeeb Abidi; the Attorney General of New Jersey

and Deputy Attorney General Cheryl Ward; the Mercer County Prosecutor's Office and employees

Angelo Onofri, Doris Galuchie, and Elizabeth Newton (collectively, "MCPO Defendants"); CBIZ

Perlman Borden, Inc. and employees Douglas Borden, Jeffrey Perlman, John Doe, and Jane Doe

(collectively, "CBIZ Defendants"); and the Hamilton Township Police Department and employee

Michael Kenna. (*See generally* ECF No. 9.)

Plaintiff's case arises following an email sent by David Borg to various New Jersey

Department of Corrections ("NJDOC") supervisors[3] on October 5, 2016. (*Id.* ¶ 2.) Plaintiff alleges

that she was discriminated against by being demoted, suspended for 120 days, restricted to the

lobby, barred from the cafeteria,[4] and denied overtime and CPR training—all of which were

---

[3]     Plaintiff alleges that Borg sent this email to Mervin Ganesh, Steven Johnson, and Sean
Abrams to discriminate against her based on her sex, and to intimidate, humiliate, harass, and
create a hostile work environment. (ECF No. 9-1 ¶ 2.)

[4]     Plaintiff alleges that she was denied access to the cafeteria and restricted to the cafeteria,
both of which are a violation of public accommodation laws. (ECF No. 9-1 ¶ 4.)

allegedly less favorable than how Plaintiff's similarly-situated male coworkers were treated.[5]  (*Id.* ¶¶ 2, 4, 5a, 5b, 5c.)  Plaintiff alleges that Borg's email and the subsequent discrimination proximately caused an emotional breakdown, which resulted in a PTSD diagnosis.  (*Id.* ¶ 8.)

Plaintiff alleges that on November 3, 2016, several NJDOC officials discriminated and retaliated against her based on her sex and for taking a leave of absence from her work.  (*Id.* ¶ 9.)  Moreover, in April 2017, Plaintiff filed complaints with the NJDOC Equal Employment Division (EED) due to an alleged hostile work environment.  (*Id.* ¶ 11.)  Plaintiff alleges that in April 2018, Laila Lawrence and Victoria Kuhn, two employees of the NJDOC EED, conspired to conceal these complaints.  (*Id.*)  Similarly, on April 17, 2017 and May 10, 2017, Plaintiff alleges that NJDOC employees[6] assisted in concealing Plaintiff's grievances.  (*Id.* ¶ 12.)

Plaintiff further alleges that in November 2018, Mills-Rogers threatened Plaintiff by telling her that she needed to retire or resign, or that she would be fired after Plaintiff sought additional time off for a work-related injury.  (*Id.* ¶ 14.)  Plaintiff alleges a similar allegation against Mills-Rogers from March 19, 2019.  (*Id.* ¶ 16.)

To add, Plaintiff alleges that from April 23, 2019 through September 20, 2020, the New Jersey Treasury, Division of Risk Management and employee Naqeeb Abidi and Deputy Attorney General Cheryl Ward denied her temporary disability benefits.  (*Id.* ¶ 17.)

---

[5]    For instance, Plaintiff alleges that she was treated differently than Sergeant Joe Reardon, Sergeant Edward Mariconda, and Lieutenant Calvin Spires, all of whom were involved in the same NJDOC investigation.  (ECF No. 9-1 ¶ 2.)  While Plaintiff notes that Reardon, Mariconda, and Spires were "later disciplined for their actions," she alleges that they did not have the same "punitive sanctions enforced against them."  (*Id.* ¶ 3.)

[6]    Specifically, Plaintiff alleges that Borg, Johnson, Abrams, Ptaszenski, DeFazio, and Mills-Rogers "denied/and or assisted . . . defendants . . . in concealing . . . grievances filed by me."  (ECF No. 9 ¶ 12.)

Plaintiff further alleges that Steinberg and the Mercer County Prosecutors Office (MCPO) conspired to "maliciously seek criminality of Plaintiff." (*Id.* ¶ 13.) Plaintiff alleges that on August 6, 2020, the MCPO and employees Onofri, Galuchie, and Newton maliciously prosected and withheld evidence when they charged Plaintiff with an unlawful possession of a handgun.[7] (*Id.* ¶ 18.)

Plaintiff also brings claims against CBIZ Borden Perlman, Inc. (CBIZ)[8] and several unnamed and named employees[9] for using "geo ping devices technologies" to discriminate, harass, and intimidate Plaintiff, which resulted in Plaintiff's hospitalization on February 5, 2019 and from February 12, 2019 to March 4, 2019. (*Id.* ¶ 15.) Plaintiff also appears to bring a civil rights claim against CBIZ. (*Id.* (stating "Defendants conduct deprive me[] of my inherent and inalienable rights to life and the pursuit of happiness" (cleaned up)).)

## II.   **LEGAL STANDARD**

On a Rule 12(b)(6) motion for failure to state a claim, "a court must 'accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022) (quoting *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008)). When considering a Rule 12(b)(6) motion, a district court conducts a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the

---

[7]    Plaintiff also names the Hamilton Township Police Department ("HTPD") and HTPD employee Michael Kenna as defendants in a claim that is apparently related to Plaintiff's arrest. (ECF No. 9 ¶ 1.)

[8]    Plaintiff asserts that NJDOC hired CBIZ, to investigate employee-based medical complaints. (ECF No. 9 ¶ 15.)

[9]    Plaintiff names CBIZ employees Jeffrey Perlman and Douglas Borden as defendants in the Second Amended Complaint. (ECF No. 9 ¶ 1.)

court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). "Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Third, the court must determine whether the well-pleaded facts "plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679); *see also Fowler v. UMPC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). A complaint that does not demonstrate more than a "mere possibility of misconduct" must be dismissed. *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679).

As noted above, Plaintiff is proceeding *pro se* and "[t]he obligation to liberally construe a pro se litigant's pleadings is well-established." *Higgs v. Att'y Gen. of the United States*, 655 F.3d 333, 339 (3d. Cir 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "Courts are to construe complaints so as to do substantial justice, keeping in mind that *pro se* complaints in particular should be construed liberally." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (citing Fed. R. Civ. P. 8(f)). "Liberal construction does not, however, require the Court to credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). "[P]ro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "Even a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Grohs*, 984 F. Supp. 2d at 282 (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

## III.   <u>DISCUSSION</u>

### A. Statute of Limitations

The Court will first address the various statute of limitations arguments raised by Defendants.

#### 1. Title VII

NJDOC Defendants argue that Plaintiff's Title VII claims are barred because she failed to file her lawsuit within 90 days of receipt of her right to sue letter. (ECF No. 38-1 at 17.)

Prior to bringing a lawsuit under Title VII, the plaintiff must first exhaust his or her administrative remedies by filing a charge with the Equal Employment Opportunity Commission. *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 469-470 (3d Cir. 2001). The EEOC then either takes action on the charge or issues a right-to-sue letter to the plaintiff. *Id.* at 470. The right-to-sue letter "indicates that a complainant has exhausted administrative remedies." *Id.* If a plaintiff chooses to bring a private suit under Title VII, he or she must do so "within 90 days of the date on which the complainant has notice of the EEOC's decision not to pursue the administrative charge." *Id.* (citing 42 U.S.C. § 2000e-5(f)(1)). Failure to comply with the ninety-day requirement may result in dismissal. *Mosel v. Hills Dep't Store, Inc.*, 789 F.2d 251, 253 (3d Cir. 1986) (affirming dismissal of complaint because the plaintiff did not file her complaint within ninety days of receiving her right to sue letter, and the plaintiff "failed to state any equitable reason for disregarding the statutory requirement"); *Rockmore v. Harrisburg Prop. Serv.*, 501 F. App'x 161, 164 (3d Cir. 2012) (dismissing plaintiff's Title VII claim as untimely because it was filed more than ninety days after receipt of EEOC right-to-sue letter).

Plaintiff attaches to the Second Amended Complaint a list of documents that she has in her possession that are relevant to this case. (ECF No. 9 at 21-35.) Plaintiff references four right-to

sue letters dated May 9, 2018; October 30, 2019; November 7, 2019; and November 18,[10] 2019. (*Id.* at 26, 30.)  Although no copies of the letters were attached to Plaintiff's pleadings, copies were provided by the NJDOC Defendants.  (ECF No. 38-4 to 38-6.)  Liberally assuming that the ninety-day clock did not begin to run until November 18, 2019, the date of the last referenced right-to-sue letter, Plaintiff would have had until February 18, 2020 to file her lawsuit.  However, Plaintiff did not file this lawsuit until December 8, 2021, which was approximately twenty-two months past the February 2020 deadline.

Plaintiff's Second Amended Complaint seeks "[t]olling" for "having been misled about the validity of claims" and for Plaintiff's "period of incapacitation," hospitalization, and "periods of excessive treatment," (ECF No. 9 at 18), but it is unclear whether Plaintiff seeks tolling of the missed filing deadlines.  The ninety-day rule in Title VII is "analogous to a statute of limitations and . . . therefore, subject to equitable modifications, such as tolling." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir 1994).

The Court, mindful of its obligation to liberally construe a pro se litigant's pleadings, will provide Plaintiff with an opportunity to move for leave to file a Third Amended Complaint that puts forth sufficient facts and arguments for why the Court should equitably toll the limitations period. *Boyce v. Ancora State Hosp.*, No. 14–0185, 2015 WL 857573, at *3 (D.N.J. Feb. 27, 2015) (dismissing plaintiff's Title VII claim without prejudice to allow plaintiff to more clearly state any facts that could support equitable tolling of the ninety-day requirement).  Therefore, the Court dismisses Plaintiff's Title VII claim without prejudice.

---

[10]     Plaintiff claims she is in possession of a right-to-sue letter dated November 8, 2019. (ECF No. 9 at 30.)  However, it appears the date on the right-to-sue letter is November 18, 2019. (*See* ECF No. 38-1 at 18 n.3.)

## 2. *NJLAD*[11][12]

NJDOC Defendants next argue that Plaintiff failed to timely file this lawsuit within NJLAD's two-year statute of limitations. (ECF No. 38-1 at 19.)

Plaintiff's Second Amended Complaint contains various NJLAD claims such as disability discrimination, gender discrimination, retaliation, and hostile work environment. (*See, e.g.*, ECF No. 9 ¶¶ 1, 7, 8, 9.) Indeed, NJLAD claims are subject to a two-year statute of limitations. *Alexander v. Seton Hall Univ.*, 8 A.3d 198, 202 (N.J. 2010) (citing N.J. Stat. Ann. § 2A:14-2(a)). A claim for a discrete discriminatory act or retaliatory act typically begins to run on the day the act occurs. *Id.* ("Generally stated, discrete acts of discrimination . . . are usually readily known when they occur and thus easily identified in respect of timing."). "[W]hen the complained-of conduct constitutes 'a series of separate acts that collectively constitute one unlawful employment practice[,]' the entire claim may be timely if filed within two years of "the date on which the last component act occurred."'" *Id.* (citing *Roa v. Roa*, 985 A.2d 1225, 1228 (N.J. 2010)).

Upon review of Plaintiff's Second Amended Complaint, it appears that Plaintiff's NJLAD-related allegations occurred between October 5, 2016 and March 19, 2019. (ECF No. 9 ¶¶ 2-16.) Liberally assuming that the last NJLAD alleged violation occurred on March 19, 2019, Plaintiff was required to bring this lawsuit by March 19, 2021. Plaintiff did not file this lawsuit until December 8, 2021, which is outside of the two-year statute of limitations. (ECF No. 1.) Therefore,

---

[11]    Plaintiff also brings state law discrimination claims against HTPO and Kenna under N.J. Stat. Ann. § 10:5-12. (ECF No. 9 ¶ 18.) However, N.J. Stat. Ann. § 10:5-12 proscribes unlawful discrimination by employers. HTPD or Kenna were not Plaintiff's employer. Thus, any claim against HTPO or Kenna for alleged violations of N.J. Stat. Ann. § 10:5-12 is dismissed.

[12]    The NJDOC Defendants also argue that Plaintiff may not file NJLAD claims against them in federal court. However, the Court need not address this argument because it finds that Plaintiff's NJLAD claims are time-barred.

Plaintiff's NJLAD claims are dismissed without prejudice. *Theodore v. Newark Dep't of Health & Cmty. Wellness*, Civ. No. 19-17726, 2022 WL 475616, at *7 (D.N.J. Feb. 16, 2022) (dismissing NJLAD claims for failure to file lawsuit within two-year statute of limitations period); *Taylor v. Computer Science Corp.*, Civ. No. 20-3464790, 2021 WL 3464790, at *5 (D.N.J. Aug. 6, 2021) (providing the plaintiff thirty days within which to move for leave to file a Third Amended Complaint that puts forth sufficient facts and arguments for why the Court should equitably toll the NJLAD limitations period).

### 3.  CIVIL RIGHTS STATUTE OF LIMITATIONS

NJDOC Defendants, HTPD, and Kenna also argue that Plaintiff's civil rights claims are barred by a two-year statute of limitations.  (ECF No. 38-1 at 20; ECF No. 45-1 at 22.)

"The length of the statute of limitations for a § 1983 and § 1985 claim is governed by the personal injury tort law of the state where the cause of action arose." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)).  In New Jersey, "[t]here is a two-year statute of limitations for claims brought under § 1983." S*ears v. Dellavelle*, Civ. No. 21-18739, 2022 WL 951367, at *3 (D.N.J. Mar. 30, 2022) (citing *O'Connor v. City of Newark*, 440 F.3d 125, 126-27 (3d Cir. 2006)).  Similarly, § 1985 claims also have a two-year statute of limitations.  *Freeman v. Schaffer*, Civ. No. 18-11566, 2019 WL 2367083, at *3 (D.N.J. June 5, 2019).  However, federal law governs when a claim begins to accrue, and "[i]t is axiomatic that under federal law, which governs the accrual of [federal civil rights] claims, 'the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the [] action.'" *Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998) (quoting *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir.1991)).

As currently pled, the allegations related to the NJDOC Defendants occurred between October 2016 to March 2019.  Therefore, Plaintiff had until March 2021 to file suit, but did not file until December 2021, more than nine months past the statute of limitations.  With respect to HTPD and Kenna, the only allegation with respect to these Defendants relates solely to the arrest date of February 12, 2019.  Therefore, Plaintiff had until February 12, 2021 to file suit, but did not file until December 2021, nearly ten months past the statute of limitations with respect to these Defendants.  On this basis, Plaintiff's civil rights claims with respect to the NJDOC Defendants, HTPD, and Kenna are dismissed.

### B. Persons Amendable to Suit Under 42 U.S.C. § 1983 and Eleventh Amendment

The MCPO Defendants, NJDOC Defendants, the NJ Attorney General, Deputy Attorney General Ward, Abidi, and the New Jersey Division of Risk Management further argue that Plaintiff's claims alleging violations of 42 U.S.C. § 1983 must be dismissed against them because they are not persons amenable to suit under § 1983.

42 U.S.C. § 1983 states in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

However, the Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."   U.S. Const. amend. XI. "Under the Eleventh

Amendment, 'an unconsenting State is immune from suits brought in federal courts by [its] own citizens.'" *Hyatt v. Cnty. of Passaic*, 340 F. App'x 833, 836 (3d Cir. 2009) (quoting *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)). Moreover, "the Amendment afford[s] states and state agencies immunity from suits brought by citizens in federal court, regardless of whether legal or equitable relief is sought." *Bhimnathwala v. N.J. State Judiciary, Fam. Div.*, Civ. No. 19-21389, 2020 WL 7237947, at *7 (D.N.J. Dec. 9, 2020) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984)), *aff'd sub nom.*, 858 F. App'x 558 (3d Cir. 2021).

Critically, the Eleventh Amendment protects not only states, but also state agencies and state officials acting in their official capacities, "as long as the state is the real party in interest." *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989); *see Shahin v. Delaware*, 563 F. App'x 196, 198 (3d Cir. 2014) ("A suit against the States, their agencies, and their employees acting in an official capacity is also barred, because it is merely another way of pleading an action against the state."); *Hyatt*, 340 F. App'x at 836 ("Eleventh Amendment immunity applies to state entities and officials if 'the state is the real, substantial party in interest.'") (citation omitted).[13] "The party asserting Eleventh Amendment immunity 'bears the burden of proving its applicability.'" *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010) (quoting *Christy v. Pa. Tpk. Comm'n*, 54 F.3d 1140, 1144 (3d Cir. 1995)).

First, this Court has repeatedly held that the NJDOC "are not 'persons' subject to liability under § 1983 as they are immune from suit in federal court under the Eleventh Amendment." *Doby v. New Jersey Dep't of Corr.*, Civ. No. 21-19350, 2022 WL 855649, at *3 (D.N.J. Mar. 23, 2022)

---

[13]     The Eleventh Amendment bars not only suits against states themselves, "but also suits for damages against 'arms of the State'—entities that, by their very nature, are so intertwined with the State that any suit against them renders the State the 'real, substantial party in interest.'" *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 83 (3d Cir. 2016) (citation omitted).

(citing *Szemple v. Rutgers Univ.*, Civ. No. 19-13300, 2021 WL 689129, at *2 (D.N.J. Feb. 22, 2021); *Wilson v. Haas*, Civ. No. 11-7001, 2012 WL 6761819, at *5 (D.N.J. Dec. 28, 2012); *Grabow v. S. State Corr. Facility*, 726 F. Supp. 537, 538–39 (D.N.J. 1989)); *see also Fox v. Bayside State Prison*, 726 F. App'x 865, 867-68 (3d Cir. 2018) ("The DOC is quintessentially an arm of the state and is funded by, controlled by, and accountable to the state."); *Marsh v. Campos*, Civ. No. 19-15320, 2021 WL 1401522, at *3 (D.N.J. Apr. 14, 2021) ("This District has consistently held that NJDOC is an arm of the State of New Jersey for Eleventh Amendment purposes." (citing *Warnett v. Corr. Med. Servs.*, Civ. No. 07-1291, 2008 WL 930739, at *3 (D.N.J. Mar. 31, 2008) (collecting cases))).  Second, the Attorney General is also not considered a "person" under § 1983, so the § 1983 claims against the Attorney General must be dismissed.[14]  *Mikhaeil v. Santos*, 646 F. App'x 158, 162 (3d Cir. 2016) (dismissing § 1983 claim against New Jersey Attorney General because "Congress did not abrogate the states' immunity through the enactment of 42 U.S.C. § 1983, . . . and New Jersey has not waived its immunity in federal court.").

Third, the Division of Risk Management must also be dismissed for the same reason; it is not a "person" amenable to suit under § 1983.  *Higgs v. Dep't of Corr.*, Civ. No. 22-5450, 2023 WL 35867, at *2 (D.N.J. Jan. 4, 2023) ("The New Jersey Department of Treasury, Division of Risk Management is immune from § 1983 claims under the Eleventh Amendment and is not a 'person' who can be held liable under § 1983.")  The same logic applies to Abidi – a Division of Risk Management state official being personally sued in an official capacity for conduct stemming

---

[14]     It necessarily follows that any alleged § 1983 claim against Deputy Attorney General Ward in her official capacity is also dismissed. *Druz v. Noto*, Civ. No. 09-5040, 2010 WL 2179550, at *4 n.9 (D.N.J. May 28, 2010), *aff'd*, 415 F. App'x 444 (3d Cir. 2011) (dismissing § 1983 claims against a New Jersey Deputy Attorney General because "it is well-settled that a state, a state agency, or a state official acting in an official capacity is not a 'person' within the meaning of 42 U.S.C. § 1983."); *Jaye v. Att'y Gen. New Jersey*, 706 F. App'x 781, 783 (3d Cir. 2017) (same).

from the performance of his job. *See Fitchik*, 873 F.2d at 659 ("federal litigants cannot get damages from the state treasury by suing a state officer in his or her official capacity.").

Fourth, regarding the alleged § 1983 violations against the MCPO Defendants, for purposes of the Eleventh Amendment, "when [New Jersey] county prosecutors engage in classic law enforcement and investigative functions, they act as officers of the State." *Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 855 (3d Cir. 2014) (citing *Coleman v. Kaye*, 87 F.3d 1491, 1505 (3d Cir.1996)).  The alleged misconduct against the MCPO Defendants in their official capacities derives from their prosecutorial function—that they charged and indicted Plaintiff without probable cause and withheld evidence.  Charging, indicting, and deciding what evidence to present in these documents are all typically essential prosecutorial functions. *Richardson v. New Jersey*, Civ. No. 16-135, 2019 WL 6130870, at *5 (D.N.J. Nov. 18, 2019) (granting motion to dismiss § 1983 claims against county prosecutor because the challenged conduct involved prosecutorial functions, so the prosecutor was not considered a "person" under § 1983.)  Therefore, the claims against the MCPO Defendants must be dismissed as they were acting as an arm of the state and within the scope of their duties when they prosecuted Plaintiff, and therefore are not considered "person[s]" under § 1983 in this case.

As currently pled, Plaintiff's claims are brought against the various Defendants in their official capacities.  (*See* ECF No. 9 ¶ 1.)  Absent allegations that the official acted outside the scope of his or her duties, the Eleventh Amendment shields Defendants from § 1983 liability. *See Redmond v. Manfredi*, 417 F. App'x 111, 112 (3d Cir. 2011) (dismissing § 1983 claim against a judge because the plaintiff failed to allege that the judge "acted outside the scope of his judicial duties.").

NJDOC Defendants similarly argue that Plaintiff's alleged ADA violations against them must also be dismissed under the Eleventh Amendment.[15]  NJDOC Defendants are correct.

First, NJDOC is entitled to Eleventh Amendment immunity for Plaintiff's claims against the NJDOC under the ADA, as they are an arm of the State of New Jersey.  *See Fox*, 726 F. App'x at 867-68 ("The DOC is quintessentially an arm of the state and is funded by, controlled by, and accountable to the state."); *Marsh*, 2021 WL 1401522, at *3 ("This District has consistently held that NJDOC is an arm of the State of New Jersey for Eleventh Amendment purposes." (citing *Warnett*, 2008 WL 930739, at *3 (collecting cases))).  Therefore, Plaintiff's ADA claims against NJDOC Defendants cannot stand.

For the reasons stated above, Plaintiff's § 1983 and ADA claims are dismissed without prejudice.[16]

## C.  PROSECUTORIAL IMMUNITY

Plaintiff alleges that the MCPO Defendants conspired with the NJDOC to bring criminal charges without probable cause against Plaintiff.  (ECF No. 9-1 ¶ 18.)  Prosecutors enjoy immunity from liability arising from a civil lawsuit for acts they take during their role as a prosecutor.  *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976) ("[A] prosecutor enjoys absolute immunity from § 1983 suits for damages when he acts within the scope of his prosecutorial duties."); *LeBlanc v. Stedman*, 483 F. App'x 666, 669 (3d Cir. 2012) (same).  If this were not the case, "the public trust of the

---

[15]     NJDOC Defendants also argue that they are entitled to Eleventh Amendment immunity on Plaintiff's Title VII, NJLAD, and civil rights claims, but since the Court already found that these claims are time-barred, the Court need not address these arguments.

[16]     *See Est. of Lagano*, 769 F.3d at 861 (holding that the District Court's dismissal with prejudice of plaintiff's claims under § 1983 and § 1985 was improper because "whether or not a plaintiff seeks leave to amend, a district court considering a 12(b)(6) dismissal 'must permit a curative amendment unless such an amendment would be inequitable or futile.'") (citing *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008)).

prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages." *Imbler*, 424 U.S. at 424-25.

"[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). This immunity includes, but is not limited to, acts such as collecting evidence, evaluating the collected evidence, and failing to conduct an adequate investigation before filing charges. *Fuchs v. Mercer Cnty.*, 260 F. App'x 472, 475 (3d Cir. 2008) (citing cases). "[E]ven "groundless charges" are protected. . . ." *Kulwicki v. Dawson*, 969 F.2d 1454, 1464 (3d Cir. 1992). When evaluating whether absolute prosecutorial immunity applies, the Court should follow a functional approach and review the nature of the conduct rather than a person's status as a prosecutor. *Fogle v. Sokol*, 957 F.3d 148, 159 (3d Cir. 2020). Prosecutors may not enjoy immunity when they are performing investigative or administrative tasks such as giving advice to police during an investigation, making statements to the press, or when acting as a witness in support of a warrant. *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009).

Here, based on the allegations in Plaintiff's Second Amended Complaint, prosecutorial immunity would bar the claims against Onofri, Galuchie, and Newton for their decisions to charge and indict Plaintiff as they were acting in their role as advocates for the State. *See Buckley*, 509 U.S. at 273. Moreover, Plaintiff fails to assert any allegations that Onofri, Galuchie, and Newton were performing investigative or administrative tasks, which would prevent them from enjoying absolute prosecutorial immunity. *Fogle*, 957 F.3d at 159. The decision to charge and indict a criminal defendant is unlike investigative or administrative tasks such as giving advice to a police

15

officer during an investigation, making a statement to the press, or acting as a witness in support of a warrant application.  *Id.*  Instead, deciding whether to charge or indict an individual is part and parcel to a prosecutor's duties as an advocate of the state.  As such, Onofri, Galuchie, and Newton enjoy prosecutorial immunity for their actions, as currently pled, surrounding Plaintiff's criminal charge and indictment.  *See Price v. Steinmetz*, Civ. No. 19-3225, 2020 WL 5039447, at *9 (E.D. Pa. Aug. 25, 2020) (finding that prosecutor enjoyed absolute immunity after deciding to indict and prosecute an individual because "[t]he action of deciding to indict and prosecute an individual is a prosecutorial action and as a result falls under the umbrella of quasi-judicial activities.").

### D.  QUALIFIED IMMUNITY

Next, Onofri, Galuchie, Newton (MCPO Defendants), Kenna (HTPD Defendant), Deputy Attorney General Ward, and Abidi (New Jersey Treasury) argue that Plaintiff's Second Amended Complaint should be dismissed against them because they all enjoy qualified immunity as currently pled.[17]  (ECF No. 19-1 at 23; ECF No. 45-1 at 22; ECF No. 47 at 29.)  The Court agrees.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Moreover, "[q]ualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Id.*  Qualified immunity aims to resolve

---

[17]     Onofri, Galuchie, and Newton argue that qualified immunity applies in the alternative to prosecutorial immunity.

"insubstantial claims" against government officials prior to discovery. *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987). It also protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citation omitted).

Qualified immunity attaches to state officials unless a plaintiff pleads facts showing "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* at 735. "At the motion-to-dismiss stage, courts evaluate qualified immunity for a constitutional claim by examining (i) whether the complaint contains plausible allegations of a constitutional violation and (ii) whether the asserted constitutional right is clearly established." *Karkalas v. Marks*, 845 F. App'x 114, 118 (3d Cir. 2021).

Broadly construing Plaintiff's Second Amended Complaint, it appears that Plaintiff is arguing that her right to be free from an arrest, absent probable cause, was violated by the HTPD and MCPO Defendants. Plaintiff is correct in the sense that the Third Circuit clearly recognizes that an individual has "the right to be free from arrest except on probable cause." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d. Circ. 1995). However, "so long as the [official] has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his [or her] discretion." *Wayte v. United States*, 470 U.S. 598, 607, (1985) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). "Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." *Orsatti*, 71 F.3d at 482-483. Moreover, probable cause exists when the facts and circumstances are sufficient to warrant a reasonable person to believe that an unlawful offense has been or is currently being committed. *United States v. Cruz*, 910 F.2d 1072, 1076 (3d

Cir.1990) (citation omitted). Reasonableness in the probable cause context is defined as whether "a reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he therefore should not have applied for the warrant under the conditions." *Orsatti*, 71 F.3d at 483. Therefore, when an officer reasonably believes that his or her conduct complies with the law, qualified immunity shields the official from personal liability. *Pearson*, 555 U.S. at 244.

Plaintiff's conclusory allegation that a criminal investigation against her was "unwarranted without probable cause" does not establish an absence of probable cause. (ECF No. 9-1 ¶ 14.) First, Plaintiff fails to plead or articulate how probable cause did not exist. Second, Plaintiff fails to allege any facts to indicate that a reasonably well-trained officer or official would have known that probable cause did not exist, let alone that Onofri, Galuchie, Newton, and Kenna knew that probable cause did not exist. Without allegations of this type, Onofri, Galuchie, Newton, and Kenna are all entitled to qualified immunity arising out of Plaintiff's criminal charge and indictment. Moreover, even if the Court were to broadly construe Plaintiff's allegation as a claim for a reckless investigation, which it does not, the right to be free from a reckless investigation "has not yet been recognized" by the Third Circuit. *Kamienski v. Ford*, Civ. No. 11-03056, 2019 WL 4556917, at *13 (D.N.J. Sept. 17, 2019), *aff'd*, 844 F. App'x 520 (3d Cir. 2021) (citing *Geness v. Cox*, 902 F.3d 344, 354 n.5 (3d Cir. 2018)).[18]

---

[18] As a threshold matter, HTPD argues that they were improperly named. HTPD also asserts that since there is no underlying constitutional violation, "there can be no derivative claim against the municipality" because a prerequisite for asserting municipal liability is that a plaintiff must offer proof that one of the municipality's officers committed a constitutional violation. (ECF No. 45-1 at 25 (citing *Vargas v. City of Philadelphia*, 783 F.3d 962, 975 (3d Cir. 2015))). Because Plaintiff's claims against Kenna are dismissed, Plaintiff's derivative claim against the municipality cannot stand.

With respect to Deputy Attorney General Ward and Abidi, Plaintiff similarly fails to articulate a well-established right violated by these Defendants. The only specific allegation Plaintiff makes against these Defendants is that they denied her worker's compensation and temporary disability benefits, "depriving [Plaintiff] of lawful" compensation. (ECF No. 9-1 ¶ 17). First, Deputy Attorney General Ward and Abidi are state officials to whom qualified immunity attaches.[19] Second, Plaintiff's conclusory statement fails to identify a constitutional right that was clearly established. Plaintiff must do more than simply allege that these Defendants deprived her of "lawful" compensation—she must plead facts demonstrating that their actions violated a statutory or constitutional right, and that the right was clearly established. *See Karkalas v. Marks*, 845 F. App'x 114, 118 (3d Cir. 2021).

For these reasons, as currently pled, Onofri, Galuchie, Newton, Kenna, Ward, and Abidi are entitled to qualified immunity. All claims against Onofri, Galuchie, Newton, Kenna, Ward, and Abidi are dismissed without prejudice.

### E. *Heck*-BARRED

MCPO Defendants, HTPD, and Michael Kenna next argue that Plaintiff's Second Amended Complaint should be dismissed against them pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994). The Court agrees.

Pursuant to *Heck*,

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28

---

[19]   *See Walker v. Coffey*, 905 F.3d 138 (3d Cir. 2018) (applying qualified immunity to a deputy attorney general); *Waste Conversion, Inc. v. Sims*, 868 F. Supp. 643 (D.N.J. 1994) (applying qualified immunity to employees of the New Jersey Department of Treasury).

U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

[*Id.* at 486-87.]

Emanating from *Heck* is the principle that a plaintiff must have a "favorable termination" of his or her criminal proceedings before bringing a lawsuit for an unconstitutional conviction or imprisonment. *Id.* This is because "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Wallace v. Kato*, 549 U.S. 384, 392 (2007) (quoting *Heck*, 512 U.S. at 486). The Supreme Court went one step further in *Wilkonson v. Dotson* and applied *Heck* to equitable relief if the requested relief would expressly or implicitly invalidate the underlying criminal conviction. 44 U.S. 74, 81-82 (2005); *Bressi v. Brennen*, 823 F. App'x 116, 119 (3d Cir. 2020) ("Under *Heck*, where success in a § 1983 action would necessarily imply the invalidity of a conviction or sentence, an individual's suit for damages or equitable relief is barred unless he can demonstrate that his conviction or sentence has been invalidated.").

Here, Plaintiff has not pled any allegations suggesting that she received a favorable termination that would entitle her to monetary or equitable remedies due to the alleged unconstitutional conviction (guilty plea). Specifically, Plaintiff does not allege that her guilty plea was reversed on appeal, expunged by an executive order, declared invalid by an authorized court, or called into question by a federal court issuing a writ of habeas corpus. *Heck*, 512 U.S. at 486-87. Instead, Plaintiff's lawsuit against the MCPO Defendants, HTPD, and Michael Kenna is an attempt to undermine the validity of her guilty plea, which has not been reversed through a favorable termination as the Second Amended Complaint currently reads. Accordingly, pursuant

to *Heck*, Plaintiff's Second Amended Complaint against MCPO Defendants, HTPD, and Michael Kenna is dismissed without prejudice.[20]

### F. INJUNCTIVE RELIEF

Plaintiff also seeks injunctive relief against the MCPO Defendants, the NJDOC Defendants, Deputy Attorney General Ward, and Abidi who argue that Plaintiff is not entitled to an injunction because there is not an ongoing violation of federal law.  (ECF No. 19-1 at 39; ECF No. 38-1 at 29; ECF No. 47 at 31.)

The *Ex parte Young* decision provides an exception to Eleventh Amendment immunity where, "in certain circumstances, a plaintiff may bring a federal suit against state officials."  *Del. River Joint Toll Bridge Comm'n v. Sec'y Pa. Dep't of Labor & Indus.*, 985 F.3d 189, 193 (3d Cir. 2021) (citing *Ex parte Young*, 209 U.S. 123 (1908)).  This exception "requires [the Court] to 'conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law' and whether it 'seeks relief properly characterized as prospective.'"  *Id.* at 193-94 (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).  A plaintiff may not invoke this exception when seeking an award of damages or any other form of retroactive relief.  *See Blueprint Capital Advisors, LLC v. Murphy*, Civ. No. 20-07663, 2022 WL 17887229, at *11 (D.N.J. Dec. 23, 2022) ("The relief sought must be prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective, such as money damages that must be paid from public funds in the state treasury.").

Here, the Court is unable to discern the scope of Plaintiff's requested injunction. First, Plaintiff fails to plausibly allege an ongoing violation of federal law.  Instead, Plaintiff's grievances

---

[20]     *See Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016) (holding that a § 1983 claim dismissed under *Heck* should be dismissed without prejudice in the event that the termination of criminal proceedings later becomes favorable).

appear to stem from Defendants' criminal prosecution of Plaintiff, which resulted in her guilty plea (the MCPO Defendants), and allegations that her worker's compensation and temporary disability benefits were denied (NJ Attorney General, Division of Risk Management, Deputy Attorney General Ward, and Abidi). The Court does not have the power to issue retroactive relief. *Blueprint Capital Advisors, LLC*, 2022 WL 17887229, at *11. To the extent that Plaintiff is requesting that the Court issue an injunction for future conduct, this remedy is "unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a 'likelihood of substantial and immediate irreparable injury.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (citation omitted). Plaintiff fails to allege any "real or immediate threat" that she will be wronged again. *Id.* Without more, Plaintiff's claim for injunctive relief is dismissed.

### G. FAILURE TO STATE A CLAIM FOR MALICIOUS PROSECUTION

Plaintiff's claim for malicious prosecution must also be dismissed. A constitutional claim for malicious prosecution in the Third Circuit pursuant to § 1983 and New Jersey law requires a plaintiff to establish four elements: "that the defendant (1) instituted proceedings (2) without probable cause . . . (3) with legal malice; and (4) the proceedings terminated in favor of the plaintiff." *Ferry v. Barry*, Civ. No. 12-009, 2012 WL 4339454, at *6 (D.N.J. Sept. 19, 2012). "[I]t is well settled that in circumstances where a criminal charge is withdrawn or a prosecution is abandoned pursuant to an agreement or compromise with the accused, the termination is viewed as indecisive and insufficient to support a cause of action for malicious prosecution." *Gordon v. Berkeley Township Police*, Civ. No. 10-5061, 2011 WL 2580473, at *5 (D.N.J. June 27, 2011) (citation omitted). In other words, when a person pleads guilty to a crime, "[s]he cannot

demonstrate that the criminal prosecution terminated in [her] favor," and therefore cannot state a claim for malicious prosecution. *Ferry*, 2012 WL 4339454, at *6.

This case is similar to *Ferry*. In *Ferry*, the plaintiff was charged with and pled guilty to loitering. *Id.* at 2. The plaintiff then brought a variety of different claims against state officials under § 1983 for false arrest, false imprisonment, malicious prosecution, illegal search, excessive force, and conspiracy to violate his constitutional rights. *Id.* at *1. The Court dismissed the plaintiff's malicious prosecution charge because the plaintiff conceded that he pled guilty to loitering. The same applies here, where Plaintiff pled guilty to second degree unlawful possession of a handgun.[21] (ECF No. 19-2.) For the same reasons as *Ferry*, Plaintiff cannot state a claim for malicious prosecution. *Id.*; *see also Grendysa v. Evesham Twp. Bd. of Educ.*, Civ. No. 02-1493, 2005 WL 2416983, at *10 (D.N.J. Sept. 27, 2005) (same). Therefore, Plaintiff's malicious prosecution claim is dismissed without prejudice.[22]

### H. State Law Tort Claims

The Court notes that Plaintiff makes multiple references to state law tort claims such as civil conspiracy, emotional distress, personal injury, and property damage throughout the Second Amended Complaint.

---

[21] Although the Court may typically only consider the allegations in a pleading, and the exhibits attached, the Court may consider information arising from a "public record" in certain situations. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993). Here, Plaintiff's criminal complaint, indictment, and guilty plea are a matter of public record, and thus, the Court is permitted to consider them. *Id.* ("Courts have defined a public record, for purposes of what properly may be considered on a motion to dismiss, to include criminal case dispositions such as convictions or mistrials[.]").

[22] *See Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016) (holding that a malicious prosecution claim under § 1983 should not be dismissed with prejudice in the event that the termination of criminal proceedings later becomes favorable).

Pursuant to the New Jersey Tort Claims Act (NJTCA), prior to asserting a tort claim against a public entity for "death or for injury or damage to person or to property," the plaintiff must file a notice within ninety days of the accrual of the claim.  N.J. Stat. Ann. § 59:8-8.  "Failure to meet the ninety-day deadline for service of a Tort Claims Act notice of claim ordinarily results in a severe penalty: '[t]he claimant shall be forever barred from recovering against [the] public entity.'" *McDade v. Siazon*, 32 A.3d 1122, 1130 (N.J. 2011) (quoting N.J.S.A. 59:8–8).  The plaintiff bears the burden of proving that a notice of claim was filed with the public entity.  *Hammond v. City of Paterson*, 368 A.2d 373 (N,J. Super. Ct. App. Div. 1976).  Plaintiff neither attaches a notice of claim to her pleadings, nor alleges that she filed a claim notice.  Therefore, Plaintiff's alleged tort claims against any state entity are dismissed.  *Baldeo v. City of Paterson*, Civ. No. 18-5359, 2019 WL 277600, at *8 (D.N.J. Jan. 18, 2019).[23]

---

[23]   If Plaintiff did file a notice of claim, but failed to attach it to her pleadings, the Court permits Plaintiff to file a sworn certification that attaches a copy of her notice of claim.

The Court also notes that the NJTCA permits late filed notice of claims in limited circumstances.  For instance,

> A claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 of this act, may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby.

[N.J. Stat. Ann. § 59:8-9.]

"Once this one-year grace period has elapsed, however, the court lacks jurisdiction to relieve a would-be claimant from his or her failure to timely file a notice of claim."  *Baldeo*, 2019 WL 277600, at *9.  The allegations in Plaintiff's Second Amended Complaint occurred between October 2016 to November 2020.  Plaintiff should have filed a claim notice by February 2021.  However, if Plaintiff failed to file a notice of claim within ninety days of the cause of action accruing, assuming the last alleged violations accrued in November 2020, Plaintiff would have had until November 2021 to file a *late* notice of claim under N.J. Stat. Ann. § 59:8-9, which is prior to Plaintiff filing suit here.

24

## I. PUNITIVE DAMAGES AGAINST PUBLIC ENTITY

Plaintiff also seeks punitive damages against all Defendants. (ECF No. 45-1 at 33). However, pursuant to N.J. Stat. Ann. § 59:9-2(c), "no punitive … damages shall be awarded against a public entity." Therefore, Plaintiff's claim for punitive damages against the NJDOC Defendants, the MCPO Defendants, and the HTPD cannot stand. *See Gardner v. New Jersey State Police*, Civ. No. 15-8982, 2017 WL 2955348, at *4 (D.N.J. July 11, 2017) ("[P]unitive damages are not available against municipality entities under the NJTCA, NJCRA, and § 1983.").

## J. CLAIMS AGAINST CBIZ DEFENDANTS

Plaintiff also appears to assert a claim against CBIZ Defendants for using "geo ping devices technology to discriminate, harass, intimidate, destroy personal property." (ECF No. 9 ¶ 15.) Noted above, Plaintiff is proceeding *pro se* and Courts are to liberally construe *pro se* complaints. *Alston*, 363 F.3d at 234. However, "[l]iberal construction does not, however, require the Court to credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs*, 984 F. Supp. 2d at 282 (citation omitted).

The Court is unsure what cause of action Plaintiff asserts against CBIZ Defendants. Plaintiff appears to be asserting a claim for civil harassment. Under New Jersey law, civil harassment is not a cause of action. *Hodge v. McGrath*, Civ. No. 4684-12T2, 2014 WL 6909499, at *1 (N.J. Super. Ct. App. Div. Dec. 10, 2014) ("Plaintiff's civil harassment claim was properly dismissed because New Jersey law has not recognized harassment as a free-standing civil cause of action for damages."). However, Plaintiff's allegations against CBIZ Defendants sound similar to a claim for intentional infliction of emotional distress (IIED). To prevail on an IIED claim, the defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community." *Buckley v. Trenton Sav. Fund Soc'y,* 544 A.2d 857, 863 (N.J. 1988).  To the extent Plaintiff is asserting an IIED claim against CBIZ Defendants, an IIED claim has a two-year statute of limitations pursuant to N.J.S.A. 2A:14-2.  *Fraser v. Bovino*, 721 A.2d 20, 25 (N.J. Super. Ct. App. Div. 1998).  Plaintiff's alleged claim against CBIZ stems from her February 5, 2019 emergency room visit, and her subsequent involuntary hospitalization from February 12, 2019 to March 4, 2019.  At the latest, the statute of limitations expired on March 4, 2021, but, Plaintiff did not file the Complaint until December 8, 2021.  Accordingly, Plaintiff's potential IIED claim would be time-barred.

Similarly, Plaintiff may instead be asserting a claim for an invasion of privacy.  (ECF No. 9 ¶ 15 (stating that CBIZ "deprived and disturbed Plaintiff's peace of habitation" (cleaned up)).)  Like an IIED claim, and invasion of privacy also has a two-year statute of limitation.  *Rumbauskas v. Cantor*, 649 A.2d 853, 856 (N.J. 1994) (citing N.J. Stat. Ann. § 2A:14-2).  As such, an invasion of privacy claim would also be time-barred.

Finally, Plaintiff alleges that CBIZ violated her federal civil rights.  (ECF No. 9 ¶ 15.)  As discussed earlier, "[t]here is a two-year statute of limitations for claims brought under § 1983."  *Sears*, 2022 WL 951367, at *3 (citation omitted).  The claim begins to accrue when the "plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action."  *Montgomery*, 59 F.3d at 126 (citation omitted).  Plaintiff alleges that she was hospitalized on February 5, 2019 and then again from February 12, 2019 through March 4, 2019 due to "named defendants," which CBIZ allegedly "acted in and on the behalf of."  (ECF No. 9 ¶ 15.)  Based on the Second Amended Complaint as currently pled, Plaintiff either knew or had reason to know about the alleged injury by March 4, 2019 at the latest, as CBIZ's alleged conduct caused the

26

hospitalizations.  Because the case was not filed within the two-year statute of limitations period, as currently pled Plaintiff's § 1983 claim against CBIZ Defendants is dismissed.

## IV.    <u>CONCLUSION</u>

For the reasons stated above, and for other good cause shown, Defendants' Motions to Dismiss (ECF Nos. 19, 38, 45, 46, 47) are **GRANTED.**  Plaintiff's Second Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.  Plaintiff shall have thirty (30) days in which to move for leave to file a Third Amended Complaint to the extent Plaintiff can cure the deficiencies identified in the Court's opinion.  An appropriate Order follows.


Dated: December 22, 2023

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

27