**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARMEN A. SEXTON,<br><br>                 Plaintiff,<br><br>          v.<br><br>NEW JERSEY DEPARTMENT OF CORRECTIONS, *et al.*,<br><br>                 Defendants. | Civil Action No. 21-20404 (GC) (JTQ)<br><br>**OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon four Motions to Dismiss (ECF Nos. 125, 126, 127, 128) Plaintiff Carmen Sexton's Third Amended Complaint (TAC) (ECF No. 120).[1] Plaintiff opposed (ECF No. 129), and Moving Defendants replied (ECF Nos. 130, 132, 133, 134). Plaintiff filed several additional sur-replies (ECF Nos. 135, 140, 160.), which the Court accepted (ECF No. 138).[2] Defendants Hamilton Township Police Department and Michael Keena filed an

---

[1]    Plaintiff originally filed a TAC on February 16, 2024.  (ECF No. 111.)  Subsequently, Plaintiff filed multiple documents purporting to amend the TAC.  (*See* ECF Nos. 112, 113, 115, 120.)  On February 23, Plaintiff advised the Court that the document at ECF No. 120 is the operative pleading in this matter.  (ECF No. 122.)  In response, the Court entered a Text Order designating the TAC at ECF No. 120 as the operative pleading.  (ECF No. 123.) Plaintiff also submitted evidence with her original attempts to file an amended pleading that she did not attach to her later operative TAC.  (*See* ECF Nos. 111-1, 111-2, 115.)  The Court will consider these documents under its obligation to liberally construe a pro se litigant's pleadings.

[2]    Courts in this district have determined that pro se plaintiffs' submissions, including sur-replies, shall be "liberally construe[d] . . . to afford both parties the benefit of their complete advocacy in [a] matter.  *See, e.g., Richardson v. Cascade Skating Rink*, Civ. No. 19-8935, 2022 WL 2314836, at *2 n.1 (D.N.J. June 28, 2022) (citing *Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011)).

additional response to Plaintiff's sur-replies.  (ECF No. 139.)  The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule (Rule) of Civil Procedure 78(b) and Local Rule 78.1(b).  For the reasons set forth below, and other good cause shown, the Motions to Dismiss are **GRANTED.**

## I.    <u>BACKGROUND</u>[3]

Plaintiff brings suit against various entities and individuals such as: the New Jersey Department of Corrections (NJDOC) and employees Davin Borg, Steven Johnson, Sean Abrams, Mervin Ganesh, Leila Lawrence, Victoria Kuhn, Marie Mills-Rogers, Tamara Rudrow Steinberg, Michael Ptaszenski, and Richard DeFazio (collectively, the NJDOC Defendants); the New Jersey Attorney General, Deputy Attorney General Cheryl Ward, and Deputy Attorney General Christina Emery; the New Jersey Treasury, Division of Risk Management (Department of Treasury) and employees Naqeeb Abidi and Manzer Hussain (collectively, the Treasury Defendants); the Mercer County Prosecutor's Office (MCPO) and employees Angelo Onofri, Doris Galuchie, Elizabeth Newton, and Renee Robeson (collectively, the MCPO Defendants); CBIZ Perlman Borden, Inc. and employees Douglas Borden, Jeffrey Perlman, John Doe, and Jane Doe (collectively, the CBIZ Defendants); and the Hamilton Township Police Department (HTPD) and HTPD employee Michael Kenna.[4]  (*See generally* ECF No. 120.)

---

[3]    On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).

[4]    The TAC named three new Defendants.  Two of the Defendants—Christina Emery and Renee Robeson—were not served with the TAC.  The Court filed a Text Order, notifying the parties of the service issues.  (ECF No. 162.)  In response, the State notified the Court that it is representing Emery and Robeson, and it waived service as to both Defendants.  (ECF No. 166.)  Further, Defendants Emery and Robeson join in the State's Motion to Dismiss.  (*Id.*)

Plaintiff asserts a myriad of claims including malicious prosecution; violations of the First, Second, Fourth, Fifth, and Fourteenth Amendments; violations under the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*; claims under 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986, and 1998-2000[5]; and violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12100 *et seq.* (*See generally* ECF No. 120.)[6]

Plaintiff Carmen Sexton was employed by the NJDOC beginning in 1995. (*Id.* at 7.[7]) Her claims appear to arise from an October 5, 2016 "routine work incident" where Plaintiff and "all supervisors on duty were responsible to respond and render help/aid to a suicidal inmate." (*Id.* at 8-9.) Following this incident, Defendants Davin Borg, Steven Johnson, and Sean Abrams initiated a disciplinary investigation into the incident. (*Id.* at 9.) Plaintiff alleges that the investigation only targeted her as opposed to all individuals that responded to the incident. (*Id.*) Plaintiff asserts that on October 5, 2016, Borg sent an email to various New Jersey Department of Corrections (NJDOC) supervisors about the implementation of a discriminatory policy targeted at Plaintiff. (*Id.*) The discriminatory policy was allegedly carried out between October 5 to October 28, 2016. (*Id.*) Plaintiff asserts that Defendants Johnson, Borg, Ganesh, Abrams, DeFazio, and Ptaszenski discriminated against Plaintiff based on her sex and subjected her to a "hostile work environment by . . . unlawful punitive actions and unwarranted discipline." (*Id.*)

---

[5]    Plaintiff also makes multiple references to the Enforcement Act of 1871 (also known as the Ku Klux Klan Act), which is now codified at 42 U.S.C. §§ 1983, 1985, and 1986. *Virginia v. Black*, 538 U.S. 343, 353 (2003).

[6]    The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

[7]    Page numbers for record cites (i.e., "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

Plaintiff asserts that the NJDOC Defendants discriminated against her by "confining [her] to the workplace lobby," stripping her of duties and assignments, depriving her of "public accommodation and meals/breaks," and withholding "available overtime opportunities" and "mandatory" employment benefits. (*Id.* at 10-18.) Plaintiff alleges that the discrimination caused her to suffer a "nervous breakdown," which resulted in a PTSD diagnosis. (*Id.* at 17-18.)

Subsequently, on November 3, 2016, Plaintiff filed an "occupational claim for injury" and gave NJDOC notice of the claim on that same day. (*Id.*) In response, Johnson, Borg, and Abrams allegedly retaliated against her for filing the occupational claim and issued Plaintiff a disciplinary notice, resulting in a demotion and 120-day suspension. (*Id.* at 19.) Plaintiff also alleges that Defendants Mills-Rogers and Ptaszenski discriminated against her in April 2017 because she filed the occupational report. (*Id.* at 20-21.) The following month, Ptaszenski, Borg, Johnson, Abrams, and Ganesh allegedly sent Plaintiff an email intended to intimidate her for "not accepting a plea," and encouraging Plaintiff to "falsely admit" to misconduct. (*Id.* at 22.)

Moreover, Plaintiff alleges that in April 2018, Defendants Laila Lawrence and Victoria Kuhn, two employees of the NJDOC Equal Employment Division (EED), conspired to conceal the ongoing discrimination against Plaintiff. (*Id.* at 23-28.) Plaintiff asserts that Lawrence and Kuhn violated her civil rights when they determined Plaintiff's claims of discrimination were not substantiated. (*Id.*) Further, from approximately May 2018 through September 2018, Steinberg and Kuhn repeatedly prevented Plaintiff from participating in her Office of Administrative Law (OAL) hearings by seeking multiple adjournments. (*Id.* at 29-35.)

On October 24, 2018, after the NJDOC Defendants were denied summary judgment before the OAL, Steinberg contacted Defendants Doris Galuchie and Angelo Onofri, both from the MCPO, and "conspired" to "initiate a bogus criminal investigation" against Plaintiff "to interfere

to deny [Plaintiff]'s N.J. State constitutional rights and den[y] [Plaintiff] a hearing for the redress of employment grievances and conceal the federal violations of law . . . [Plaintiff] was representing in the OAL matter." (*Id.* at 31.) Specifically, on February 12, 2019, the HTPD and employee Michael Kenna responded to Plaintiff's residence due to a suspicious driver in the area. (*Id.* at 36.) During law enforcement's encounter with Plaintiff, a handgun was found on her person. (*Id.*) Plaintiff was arrested for unlawful possession of a firearm. (*Id.* at 33.) According to Plaintiff, the HTPD and Kenna "unlawfully arrested . . . Plaintiff" and prosecuted her "without probable cause . . . by obtaining the complaint warrant on February 12, 2019 under the direction and prosecuting authority of the" MCPO. (*Id.* at 36.) The purpose of the arrest was to provide the NJDOC Defendants with "unlawful cause to terminate [Plaintiff's] employment" and put "the pending OAL case on hold [pending] the criminal investigation." (*Id.*) Plaintiff asserts that MCPO Defendants subjected her to an "unlawful prosecution and conviction" regarding the handgun "under the Pre-Trial Intervention Program" (PTI).[8] (*Id.*) These events led to involuntary psychiatric medical care that Plaintiff alleges was unnecessary. (*Id.* at 41-43.) The TAC outlines Plaintiff's efforts to appeal her conviction; those efforts have been unsuccessful and Plaintiff is allegedly appealing her case to the New Jersey Supreme Court. (*Id.*)

Plaintiff further alleges that in November 2018, Mills-Rogers threatened Plaintiff by telling her that she needed to retire or resign, or that she would be fired after Plaintiff sought additional time off for a work-related injury. (*Id.* at 53-54) Plaintiff also alleges a similar allegation against

---

[8]     "PTI is an alternative procedure to the traditional process of prosecuting criminal defendants. It is a diversionary program through which certain offenders are able to avoid criminal prosecution by receiving early rehabilitative services expected to deter future criminal behavior." *State of New Jersey v. Nwobu*, 652 A.2d 1209, 1211 (N.J. 1995). If a defendant successfully completes PTI, charges are dismissed. *See State v. Allen*, 786 A.2d 903, 907 (N.J. Super. App. Div. Ct. 2001).

Mills-Rogers from March 19, 2019.  (*Id.*)  And, from April 22, 2019, through September 1, 2020, Deputy Attorney General Cheryl Ward, Deputy Attorney General Christina Emery, the Treasury Defendants allegedly denied her temporary disability benefits.  (*Id.* 53-65.)

Finally, turning to the CBIZ Defendants, Plaintiff appears to allege that the CBIZ Defendants were working with the NJDOC Defendants and Treasury Defendants.  (ECF No. 120 at 54-58.)  Specifically, the CBIZ Defendants "were assigned to investigate the NJ [S]tate workers compensation case" between February 5, 2019, to November 3, 2019.  (*Id.*)  Further, Plaintiff asserts that the CBIZ Defendants harassed and intimidated her through "torturous conduct . . . [which] further exasperated [Plaintiff's] permanent work injury."  (*Id.* at 54-55.)  Plaintiff also alleges that the harassment led her to seek medical treatment between February and March 2019, and that the CBIZ Defendants aided other named defendants in concealing violations of the law between April to July 2019.  (*Id.* Claim Nos. 13-14.)

## II.   <u>LEGAL STANDARD</u>

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'"  *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Dir. of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)).  When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere

conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis*, 824 F.3d at 349).

Plaintiff is proceeding *pro se* and "[t]he obligation to liberally construe a pro se litigant's pleadings is well-established." *Higgs v. Att'y Gen. of the United States*, 655 F.3d 333, 339 (3d. Cir 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "Courts are to construe complaints so as to do substantial justice, . . . keeping in mind that *pro se* complaints in particular should be construed liberally." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (citing Fed. R. Civ. P. 8(f)). "Liberal construction does not, however, require the Court to credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). "[P]ro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

"Even a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Grohs*, 984 F. Supp. 2d at 282 (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)). Importantly, when leave to amend would be futile, courts will dismiss a *pro se* plaintiff's complaint with prejudice. *See Mickell v. Geroulo*, 794 F. App'x 223, 226 (3d Cir. 2019); *see also Rhett v. New Jersey Superior Court*, 260 F. App'x 513, 515-16 (3d Cir. 2008) (finding that a pro se plaintiff's "rambling pleadings contain[ing] mostly unintelligible allegations" warranted dismissal with prejudice).

## III.  DISCUSSION

### A.  STATUTE OF LIMITATIONS[9]

The Court will first address the various statute of limitation arguments raised by Defendants.

#### 1.  Title VII

The NJDOC Defendants argue that Plaintiff's Title VII claims are barred because she failed to file her lawsuit within 90 days of receiving her right-to-sue letter from the Equal Employment Opportunity Commission (EEOC). (ECF No. 125-4 at 10-14.)

Prior to bringing a lawsuit under Title VII, the plaintiff must first exhaust his or her administrative remedies by filing a charge with the EEOC. *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 469-470 (3d Cir. 2001). The EEOC then either takes action on the charge or issues a right-to-sue letter to the plaintiff. *Id.* at 470. The right-to-sue letter "indicates that a complainant has exhausted administrative remedies." *Id.* If a plaintiff chooses to bring a

---

[9] Unlike the Second Amended Complaint, the TAC does not bring claims under the New Jersey Law Against Discrimination Act (NJLAD) and New Jersey Civil Rights Act (NJCRA). (*See* ECF No. 9.) "In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019). As a result, "the most recently filed amended complaint becomes the operative pleading." *Id.* In the context of *pro se* litigants, "liberal construction of a pro se amended complaint does not mean accumulating allegations from superseded pleadings." *Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019). Therefore, the Court finds that Plaintiff has abandoned her NJLAD and NJCRA claims. *See also U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 517 (3d Cir. 2007) (noting that claims from a prior complaint may be preserved if the plaintiff adds a section asserting claims are preserved). Even if Plaintiff had attempted to preserve these claims, the TAC has not corrected the time bar deficiencies in the Second Amended Complaint, and therefore any NJLAD and NJCRA claims would be dismissed with prejudice. *See Sexton v. N.J. Dep't of Corr.*, Civ. No. 21-20404, 2023 WL 8868810, at *4 (D.N.J. Dec. 22, 2023) (finding that Plaintiff's NJLAD claims were time barred); *Dean v. Deptford Twp.*, 13-5197, 2015 WL 13640263, at *1 (D.N.J. Apr. 1, 2015) (noting that the statute of limitations for NJCRA claims is two years); *see also Atkinson*, 473 F.3d at 517 (noting that claims from a prior complaint may only be preserved if it would not be futile to replead such claims).

private suit under Title VII, he or she must do so "within 90 days of the date on which the complainant has notice of the EEOC's decision not to pursue the administrative charge." *Id.* (citing 42 U.S.C. § 2000e-5(f)(1)). Failure to comply with the ninety-day requirement may result in dismissal. *Mosel v. Hills Dep't Store, Inc.*, 789 F.2d 251, 253 (3d Cir. 1986) (affirming dismissal of complaint because the plaintiff did not file her complaint within ninety days of receiving her right-to-sue letter, and the plaintiff "failed to state any equitable reason for disregarding the statutory requirement"); *Rockmore v. Harrisburg Prop. Serv.*, 501 F. App'x 161, 164 (3d Cir. 2012) (dismissing plaintiff's Title VII claim as untimely because it was filed more than ninety days after receipt of EEOC right-to-sue letter).

Plaintiff has filed several volumes of exhibits with her TAC. (*See* ECF Nos. 111-1, 111-2, 115.) Included in that evidence are four right-to-sue letters dated May 9, 2018; October 30, 2019; November 7, 2019; and November 18, 2019. (ECF No. 111-2 at 30-57.) Liberally assuming that the ninety-day clock did not begin to run until November 18, 2019, the date of the last referenced right-to-sue letter, Plaintiff would have had until February 18, 2020, to file her lawsuit. However, Plaintiff did not file this lawsuit until December 8, 2021, which was approximately twenty-two (22) months past the February 2020 deadline.

"The ninety-day statute of limitations [under Title VII] is subject to equitable modification." *Moses v. Home Depot, Inc.*, Civ. No. 16-2400, 2017 WL 2784710, at *6 (D.N.J. June 27, 2017) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). Equitable tolling is appropriate: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *McEady v. Camden Cnty. Police Dep't*, Civ. No. 16-1108, 2017

WL 253156, at *3 (D.N.J. Jan. 20, 2017) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir 1994)). Importantly, "[c]ourts have exercised restraint in applying equitable tolling, preferring to 'exercise caution in using the doctrine' and 'emphasizing the importance of adhering to the EEOC's ninety-day filing period.'" *Id.* (quoting *Seitzinger v. Reading Hosp. and Med. Center*, 165 F.3d 236, 240 (3d Cir. 1999)). "[P]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Seitzinger*, 165 F.3d at 240 (quoting *Baldwin Cnty. Welcome Center v. Brown*, 466 U.S. 147, 152 (1984)).

Here, Plaintiff has not "put[] forth sufficient facts and arguments for why the Court should equitably toll the limitations period." *Sexton*, 2023 WL 8868810, at *4; *see also* (ECF No. 120 at 69) (Plaintiff asserting that tolling applies for the following reasons: "tolling for trickery"; "tolling for periods of mental incapacitation"; and "tolling for continuance of violations").

First, Plaintiff does not argue that she timely asserted her rights, but mistakenly in the wrong forum. Second, Plaintiff has not pled any facts to show that Defendants actively misled her about her claims. To the contrary, the various right-to-sue letters make clear that Plaintiff needed to file her lawsuit within 90 days of receipt. (ECF No. 111-2 at 30, 47, 51, 55, 57.) In other words, she was clearly informed that she could file a lawsuit and that the lawsuit must be filed within a specified timeframe.

Finally, a medical condition may be "extraordinary" and warrant equitable tolling. *See Demby v. City of Camden*, Civ. No. 20-13893, 2022 WL 4377197, at *5 (D.N.J. Sep. 22, 2022) ("Mental incapacity, involving unusual circumstances, has been recognized as a basis for equitable tolling of statutes of limitations. To warrant equitable tolling, 'the alleged mental illness must be demonstrated and compelling.'" (quoting *Patnaude v. Gonzales*, 478 F. Supp. 2d 643, 648-49 (D.

10

Del. 2007))); *see also Taylor v. Computer Sciences Corp.*, Civ. No. 20-01848, 2022 WL 2046887, at *3 (D.N.J. June 6, 2022) ("In terms of receiving equitable tolling due to a plaintiff's medical condition, the threshold is . . . high."). Here, Plaintiff's arguments regarding her "periods of mental incapacitation" are insufficient to warrant tolling. Even accepting as true the fact that Plaintiff was hospitalized between February and March 2019, the TAC and accompanying exhibits indicate that Plaintiff was actively filing charges and sending letters to the EEOC throughout the statute of limitations period despite the two months she was hospitalized. (*See, e.g.*, ECF No. 120; ECF No. 111-2 at 38-57); *see also Hatcher v. Potter*, 196 F. App'x 120, 123 (3d Cir. 2006) (finding that the district court did not "abuse its discretion in refusing to equitably toll the time period for filing a complaint, given that, by [Plaintiff's] own admission, he was able to file a worker's compensation claim during the time period in question"); *Fort v. United States*, 712 F. Supp. 3d 575, 589 (D.N.J. 2024) (noting that "[a]n otherwise time-barred claim may be resuscitated when the plaintiff shows that she 'has been prevented from filing in a timely manner due to sufficiently inequitable circumstances'" (quoting *D.J.S.-W. ex rel. Stewart v. United States*, 962 F.3d 745, 749-50 (3d Cir. 2020))). After careful review and consideration of Plaintiff's TAC and accompanying exhibits, the Court does not find that Plaintiff's medical conditions warrant tolling the limitations period because the record indicates that she was capable of exercising her right to sue within the 90-day window. *See also Green v. Potter*, 687 F. Supp. 2d 502, 518 (D.N.J. 2009) (finding that "to allow equitable tolling for reasons of mental incapacity, the alleged mental illness must be demonstrated and compelling," and finding that the plaintiff "presented virtually no evidence to suggest that her mental illness prevented her from managing her affairs and understanding and acting on her rights at any point"). Indeed, the 90-day window was from November 2019 to February 2020, while

Plaintiff's period of mental incapacitation was between February 2019 to March 2019.  (*See* ECF No. 120 at 43-44.)

Because Plaintiff has been unable to cure the untimeliness of her Title VII claim after multiple opportunities to amend, the Court finds that further amendment would be futile and dismisses Plaintiff's Title VII claim with prejudice.  *See also Olsen v. Citi Bank Legal Dep't*, Civ. No. 15-2190, 2015 WL 7258861, at *3 (D.N.J. Nov. 17, 2015) (dismissing *pro se* complaint with prejudice where amendment was futile).

### 2.   *Civil Rights Statute of Limitations*

The NJDOC Defendants, HTPD, and Kenna also argue that Plaintiff's civil rights claims are barred by a two-year statute of limitations.  (ECF No. 125-4 at 20-21; ECF No. 128-1 at 22-23.)

"The length of the statute of limitations for a § 1983 and § 1985 claim is governed by the personal injury tort law of the state where the cause of action arose."  *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)).  In New Jersey, "[t]here is a two-year statute of limitations for claims brought under § 1983."  *Sears v. Dellavelle*, Civ. No. 21-18739, 2022 WL 951367, at *3 (D.N.J. Mar. 30, 2022) (citing *O'Connor v. City of Newark*, 440 F.3d 125, 126-27 (3d Cir. 2006)).  Similarly, § 1985 claims also have a two-year statute of limitations.  *Freeman v. Schaffer*, Civ. No. 18-11566, 2019 WL 2367083, at *3 (D.N.J. June 5, 2019).  However, federal law governs when a claim begins to accrue, and "[i]t is axiomatic that . . . 'the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the [] action.'"  *Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998) (quoting *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir.1991)).

As currently pled in the TAC, the allegations related to the NJDOC Defendants occurred between October 2016 to March 2019.  (*See* ECF No. 120 ¶¶ 7-9, Claim Nos. 1-11.)  Plaintiff's volumes of exhibits do not suggest otherwise.  (*See* ECF Nos. 111-1, 111-2, 115.)  Therefore, Plaintiff had until March 2021 to file suit, but did not file until December 2021, more than nine months past the statute of limitations.

With respect to the HTPD and Kenna, the only allegation as to these Defendants appears to relate to the arrest date of February 12, 2019.  (*See* ECF No. 120 at 36.)  Therefore, Plaintiff had until February 12, 2021, to file suit, but did not file until December 2021, nearly ten months past the statute of limitations.

On this basis, Plaintiff's civil rights claims with respect to the NJDOC Defendants, HTPD, and Kenna that are unrelated to malicious prosecution are dismissed with prejudice.[10]  Nor, for the same reasons previously outlined, has Plaintiff provided sufficient justification warranting equitable tolling.  *See Hernandez v. Montoya*, 636 F. Supp. 3d 511, 517-18 (D.N.J. 2022) (finding that the plaintiff could not show "extraordinary" circumstances warranting tolling of the statute of limitations because the plaintiff was able to submit filings to the court).[11]

---

[10]    This statute of limitations analysis does not apply to Plaintiff's malicious prosecution claims, which only "accrue when the termination of criminal proceedings becomes favorable; that is, when 'the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus.'"  *Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016).  The Court dismisses the malicious prosecution claims on different grounds discussed herein.

[11]    Plaintiff also asserts claims under 42 U.S.C. §§ 1982 and 1986.  Section 1982 claims are also governed by a two-year statute of limitations period.  *See Bhatt v. Hoffman*, Civ. No. 15-005, 2020 WL 5593761, at *5 (D.N.J. Sep. 17, 2020).  Section 1986 claims must be brought within one year after the cause of action has accrued.  *Id.*  Because Plaintiff has failed to file her § 1982 and § 1986 claims within the proscribed limitations periods, those claims are dismissed with prejudice as any further amendments would be futile.  Further, Plaintiff asserts claims under 42 U.S.C. § 1981.  "No private right of action lies against a state actor under § 1981."  *Ford v. Southeastern Pa. Transp. Auth.*, 374 F. App'x 325, 326 (3d Cir. 2010); *see McGovern v. City of Philadelphia*,

### B. JURISDICTION, AMENABILITY TO SUIT, AND IMMUNITY

The MCPO Defendants, NJDOC Defendants, the New Jersey Attorney General, Deputy Attorney General Ward, Deputy Attorney General Emery, employees Abidi and Hussain, and the Treasury Defendants argue that they are shielded from liability under sovereign immunity. The Court agrees.

#### 1. Sovereign Immunity

It is well established that under the principle of sovereign immunity, "[s]tate governments and their subsidiary units are immune from suit in federal court under the Eleventh Amendment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 253 (3d Cir. 2010). As a result, state sovereign immunity under the Eleventh Amendment "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Wright v. New Jersey/Dep't of Educ.*, 115 F. Supp. 3d 490, 494 (D.N.J. 2015). The jurisdictional bar applies unless Congress has abrogated a state's sovereign immunity or a state has consented to suit. *See Lombardo v. Pa. Dep't of Public Welfare*, 540 F.3d 190, 195-96 (3d Cir. 2008).

Critically, the Eleventh Amendment protects not only states, but also state agencies and state officials acting in their official capacities, "as long as the state is the real party in interest." *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989); *see Shahin v. Delaware*, 563 F. App'x 196, 198 (3d Cir. 2014) ("A suit against the States, their agencies, and their employees acting in an official capacity is also barred, because it is merely another way of pleading an action against the state."); *Hyatt v. Cnty. of Passaic*, 340 F. App'x 833, 836 (3d Cir. 2009) ("Eleventh Amendment immunity applies to state entities and officials if 'the state is the

---

554 F.3d 114, 121 (3d Cir. 2009). Because Plaintiff's § 1981 claims are against state actors, such claims are dismissed with prejudice because any further amendment would be futile.

real, substantial party in interest.'") (citation omitted).[12]  "In doubtful cases, the Court will analyze several factors to determine whether an entity is an agency of the State, *i.e.*, whether the State is the real party in interest."  *Kaul v. Christie*, 372 F. Supp. 3d 206, 243 (D.N.J. 2019) (citing *See Fitchik*, 873 F.2d at 659-60).  Importantly, "[t]he party asserting Eleventh Amendment immunity 'bears the burden of proving its applicability.'"  *Betts*, 621 F.3d at 254 (quoting *Christy v. Pa. Tpk. Comm'n*, 54 F.3d 1140, 1144 (3d Cir. 1995)).

Turning to the Defendants in this case, courts have consistently held that the NJDOC, the New Jersey Attorney General's Office, and the Department of Treasury, along with employees of these entities acting within their official capacity, are shielded from liability under the Eleventh Amendment.  *See, e.g.*, *Wimbush v. Jenkins*, Civ. No. 13-4654, 2014 WL 1607354, at *4 (D.N.J. Apr. 22, 2014) ("NJDOC enjoys minimal autonomy, operating under a commissioner appointed by the New Jersey Governor with the consent of the state Senate.  NJDOC therefore stands in the shoes of New Jersey for sovereign immunity purposes and may not be sued in federal court."); *Hockaday v. N.J. Att'y Gen. Office*, Civ. No. 16-0762, 2016 WL 6694483, at *6 (D.N.J. Nov. 14, 2016) ("The Attorney General's Office and the State Police are indisputably agencies and departments, or 'subunits of the State,' entitled to Eleventh Amendment immunity.") (citation omitted); *May v. Irvington Police Dep't*, Civ. No. 15-764, 2016 WL 236212, at *2 (D.N.J. Jan. 19, 2016) ("There is no real dispute that . . . New Jersey Department of Treasury [is] entitled to immunity due to [its] status as [a] state department.").  The Court adopts the analysis already performed by courts in this district regarding Defendants in this suit because such analysis is not

---

[12]    The Eleventh Amendment bars not only suits against states themselves, "but also suits for damages against 'arms of the State'—entities that, by their very nature, are so intertwined with the State that any suit against them renders the State the 'real, substantial party in interest.'"  *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 83 (3d Cir. 2016) (citation omitted).

15

subject to reasonable dispute. *See Kaul*, 372 F. Supp. 3d at 243 (adopting prior district court analysis as to whether a government entity enjoys Eleventh Amendment immunity).

Further, while courts typically find that sovereign immunity extends to county prosecutor's offices and their employees, *see Hoffman v. Warren Cnty. Pros. Office*, Civ. No. 23-00561, 2023 WL 8271806, at *4 (D.N.J. Nov. 30, 2023), courts must nonetheless "conduct a full *Fitchik* analysis before concluding a county prosecutor's office is entitled to sovereign immunity," *Traynor v. Billhimer*, Civ. No. 21-7463, 2023 WL 2214178, at *4 (D.N.J. Feb. 24, 2023) (citing *Est. of Lagano v. Bergen Cty. Prosecutor's Off*, 769 F.3d 850, 857-58 (3d Cir. 2014)). That analysis requires courts to consider the following factors: "(1) whether the money to pay for the judgment would come from the state; (2) the status of the agency under state law; and (3) what degree of autonomy the agency has." *Est. of Lagano*, 769 F.3d at 857 (citing *Fitchik*, 873 F.2d at 659). The first factor is the most important of the three factors. *Hof v. Janci*, Civ. No. 17-295, 2017 WL 3923296, at *3 (D.N.J. Sep. 7, 2017).

Here, Defendants have established that they satisfy the *Fitchik* factors for sovereign immunity. As to the first factor, Plaintiff's claims arise from allegations that the prosecutor's office brought and pursued criminal charges without probable cause. It is well settled that "[d]ecisions such as whether to bring charges are clearly within the 'law enforcement functions . . . that the Legislature has delegated to the county prosecutors," and thus "any damages Plaintiff seeks against the [MCPO] would be paid from the State's treasury." *Rouse v. N.J. Dep't of Health & Hum. Servs.*, Civ. No. 15-01511, 2015 WL 5996324, at *3 (D.N.J. Oct. 13, 2015) (citation omitted); *see also Wright v. State of New Jersey*, 778 A.2d 422, 464 (N.J. Super. Ct. App. Div. 2001) ("[T]he State should be obligated to pay the county prosecutors and their subordinates' defense costs and to indemnify them if their alleged misconduct involved the State function of

16

investigation and enforcement of the criminal laws.")  The State asserts in its brief that Defendants "were also arms of the state in their official capacity due to their role as State employees enjoying little autonomy[,] and [MCPO Defendants] enjoy the benefits of State defense and indemnification as evidenced by the Attorney General's Office representation."  (ECF No. 127-4 at 33.)  This is sufficient to satisfy the first prong.  *See Hof*, 2017 WL 3923296, at *3 (finding the first *Fitchik* factor satisfied as to the Hunterdon County Prosecutor's Office and its employee because the State asserted it was indemnifying the defendants in its brief).

Next, the prosecutor's office's "status as a 'constitutionally established office' satisfies the second *Fitchik* factor."  *Est. of Bardzell v. Gomperts*, 515 F. Supp. 3d 256, 269 (D.N.J. 2021) (quoting *Rouse*, 2015 WL 5996324, at *3).  As to the third factor, the New Jersey Supreme Court has explained that "the Attorney General has the ultimate responsibility in matters related to the enforcement of the State's criminal laws that have been legislatively delegated to county prosecutors."  *Wright*, 778 A.2d at 464 (citing N.J. Stat. Ann. §§ 52:17B-98 & 52:17B-103).

Based on the above, the NJDOC, the New Jersey Attorney General's Office, the Department of Treasury, and the MCPO, along with employees of these entities acting within their official capacity, are shielded from liability under the Eleventh Amendment.  As this is Plaintiff's TAC, the Court finds that any further amendment would be futile.  Therefore, Defendants' Motions to Dismiss based on Eleventh Amendment sovereign immunity are granted.  *See Pue v. N.J. Dep't of Labor*, Civ. No. 23-855, 2024 WL 1975387, at *3-4, 6 (D.N.J. May 3, 2024) (finding that pro a se plaintiff's second amended complaint still failed to allege facts that would change the court's prior ruling that defendants were entitled to immunity under the Eleventh Amendment, and further finding that any additional amendments would be futile); *Banks v. FBI*, Civ. No. 19-9367, 2020

WL 4261198, at *1-2 (D.N.J. July 23, 2020) (dismissing a pro se plaintiff's third amended complaint with prejudice on sovereign immunity grounds).

### 2.   ADA Bar

Similarly, NJDOC Defendants argue that Plaintiff's alleged violations of Title I of the ADA[13] against them must also be dismissed under the Eleventh Amendment.  They are correct.

"[Title I of] the ADA prohibits certain employers, including the States, from discriminating against a qualified individual with a disability because of the disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms conditions, and privileges of employment."  *Koslow v. Pennsylvania*, 302 F.3d 161, 177 (3d Cir. 2002).  Nevertheless, it is well established "that the Eleventh Amendment bars suits seeking money damages for state violations of Title I of the ADA."  *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 551 (3d Cir. 2007) (citing *Bd. of Tr. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360, 368, 374 (2001)); *see Sweet-Springs v. Dep't of Child. & Fam.*, Civ. No. 12-706, 2013 WL 3043644, at *6 (D.N.J. June 17, 2013) (same).  And, "[t]hat type of action brought against a state official is barred also."  *Foster v. N.J. Dep't of Transp.*, Civ. No. 04-101, 2005 WL 3542462, at *5 (D.N.J. Dec. 27, 2005) (citing *Santiago v. City of Vineland*, 107 F. Supp. 2d 512, 552 (D.N.J. 2000)).  As this is Plaintiff's TAC, the Court finds that any further amendment would be futile.  *See also Wong v. N.J. Dep't of Child. & Fam.*, Civ. No. 12-5915, 2013 WL

---

[13]    A review of Plaintiff's TAC indicates that to the extent she alleges ADA claims, such claims relate to Title I, 42 U.S.C § 12112.  (*See* ECF No. 120 at 58, 63, 64.)  Further, notwithstanding sovereign immunity, and liberally construing the TAC, Plaintiff has failed to Allege sufficient facts to support her ADA claim.  *Cf. Nguyen v. Quick Check, Store No. 129*, Civ. No. 12-3300, 2013 WL 6623923, at *3-4 (D.N.J. Dec. 16, 2013) (dismissing a pro se plaintiff's ADA claims under Title I because she could not show that that she had a disability, was a qualified individual under the ADA, and suffered an adverse employment because of her disability).

5503301, at *3 (D.N.J. Oct. 1, 2013) (dismissing a pro se plaintiff's complaint with prejudice because the ADA claims under Title I were barred by sovereign immunity).    Therefore, Defendants' Motions to Dismiss Plaintiff's ADA claims are granted.

### 3.  *Section 1983 "Persons" Amendable to Suit*

The MCPO Defendants, NJDOC Defendants, the New Jersey Attorney General, Deputy Attorney General Ward, Deputy Attorney General Emery, and the Treasury Defendants further argue that Plaintiff's claims alleging violations of 42 U.S.C. § 1983 must be dismissed against them because they are not persons amenable to suit under § 1983.

As Courts in this district have recognized, § 1983 provides its own bar to bringing actions against states and state actors, *i.e.*, "who or what is a suable 'person' under [§] 1983." *See Kaul*, 372 F. Supp. 3d at 243 (recognizing that the suable person analysis is a separate analysis from Eleventh Amendment sovereign immunity).

Section 1983 states in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

To obtain relief under § 1983, a plaintiff must establish: (1) that one of his rights secured by the Constitution or laws of the United States was violated; and (2) that this violation was caused or committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

"[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

First, courts in this district have repeatedly held that the NJDOC and employees acting in their official capacity "are not 'persons' subject to liability under § 1983 as they are immune from suit in federal court under the Eleventh Amendment." *Doby v. N.J. Dep't of Corr.*, Civ. No. 21-19350, 2022 WL 855649, at *3 (D.N.J. Mar. 23, 2022) (citing *Szemple v. Rutgers Univ.*, Civ. No. 19-13300, 2021 WL 689129, at *2 (D.N.J. Feb. 22, 2021); *Wilson v. Haas*, Civ. No. 11-7001, 2012 WL 6761819, at *5 (D.N.J. Dec. 28, 2012); *Grabow v. S. State Corr. Facility*, 726 F. Supp. 537, 538-39 (D.N.J. 1989)); *see also Fox v. Bayside State Prison*, 726 F. App'x 865, 867-68 (3d Cir. 2018) ("The DOC is quintessentially an arm of the state and is funded by, controlled by, and accountable to the state."); *Marsh v. Campos*, Civ. No. 19-15320, 2021 WL 1401522, at *3 (D.N.J. Apr. 14, 2021) ("This District has consistently held that NJDOC is an arm of the State of New Jersey for Eleventh Amendment purposes." (citing *Warnett v. Corr. Med. Servs.*, Civ. No. 07-1291, 2008 WL 930739, at *3 (D.N.J. Mar. 31, 2008) (collecting cases))).

Second, the Attorney General is also not considered a "person" under § 1983, so the § 1983 claims against the Attorney General must be dismissed. *Mikhaeil v. Santos*, 646 F. App'x 158, 162 (3d Cir. 2016) (dismissing § 1983 claim against New Jersey Attorney General because "Congress did not abrogate the states' immunity through the enactment of 42 U.S.C. § 1983, . . . and New Jersey has not waived its immunity in federal court.").[14]

---

[14]    It necessarily follows that any alleged § 1983 claims against Deputy Attorney General Ward and Deputy Attorney General Emery in their official capacities are also dismissed. *Druz v. Noto*, Civ. No. 09-5040, 2010 WL 2179550, at *4 n.9 (D.N.J. May 28, 2010), *aff'd*, 415 F. App'x 444 (3d Cir. 2011) (dismissing § 1983 claims against a New Jersey Deputy Attorney General because "it is well-settled that a state, a state agency, or a state official acting in an official capacity is not a 'person' within the meaning of 42 U.S.C. § 1983."); *Jaye v. Att'y Gen. New Jersey*, 706 F. App'x 781, 783 (3d Cir. 2017) (same).

Third, the Department of Treasury must also be dismissed for the same reason; it is not a "person" amenable to suit under § 1983. *Higgs v. Dep't of Corr.*, Civ. No. 22-5450, 2023 WL 35867, at *2 (D.N.J. Jan. 4, 2023) ("The New Jersey Department of Treasury, Division of Risk Management is immune from § 1983 claims under the Eleventh Amendment and is not a 'person' who can be held liable under § 1983.") The same logic applies to the Treasury Department employees being personally sued in their official capacity for conduct stemming from the performance of their job. *See Fitchik*, 873 F.2d at 659 ("federal litigants cannot get damages from the state treasury by suing a state officer in his or her official capacity.").

Fourth, it is well established that a prosecutor's office "is a state agency, not a local governmental body, [and therefore] it is not a person amenable to suit under § 1983." *Mikhaeil*, 646 F. App'x at 161; *Simmons v. Roxbury Police Dep't*, Civ. No. 17-2526, 2017 WL 5188060, at *4 (D.N.J. Nov. 9, 2017) (dismissing § 1983 claims against prosecutor's office because it is not a person amenable to suit). Similarly, "when [New Jersey] county prosecutors engage in classic law enforcement and investigative functions, they act as officers of the State," *Est. of Lagano*, 769 F.3d at 855 (citing *Coleman v. Kaye*, 87 F.3d 1491, 1505 (3d Cir.1996)), and therefore are not persons amendable to suit under § 1983, *Richardson v. State of New Jersey*, Civ. No. 16-135, 2019 WL 6130870, at *4 (D.N.J. Nov. 18, 2019). *See also Mikhaeil*, 646 F. App'x at 161. The alleged misconduct against the MCPO prosecutors in their official capacities derives from their prosecutorial function—that they charged and indicted Plaintiff without probable cause and withheld evidence. (ECF No. 120 at 31-36.) Charging, indicting, and deciding what evidence to present in these documents are all typically essential prosecutorial functions. *See Richardson*, 2019 WL 6130870, at *5 (granting motion to dismiss § 1983 claims against county prosecutor because the challenged conduct involved prosecutorial functions, so the prosecutor was not

considered a "person" under § 1983.)  Therefore, the claims against the MCPO employees must be dismissed as they were acting as an arm of the state and within the scope of their duties when they prosecuted Plaintiff, and as such are not considered "person[s]" under § 1983 in this case. *See Hoffman*, 2023 WL 8271806, at *5-6 (finding that the Warren County Prosecutor's Office and its employees were not "persons" for purpose of § 1983 because the complaint alleged classic law enforcement and investigative functions).

Here, Plaintiff's claims are brought against the various Defendants in their official capacities.  (*See generally* ECF No. 120 (asserting that the claims are brought against the various Defendants in their "official capacity").)  Absent allegations that the official acted outside the scope of his or her duties, Defendants are not considered "persons" under § 1983 liability.  As this is Plaintiff's TAC, the Court finds that any further amendment would be futile.  Therefore, Defendants' Motions to Dismiss based on the § 1983 "persons" bar are granted.  *See Itiowe v. Trump*, 2022 WL 17708120, at *8-9 (D.N.J. Dec. 14, 2022) (dismissing a pro se plaintiff's third amended complaint for failing to state plausible § 1983 claim).

### 4. *Individual Defenses*

While state actors are typically shielded from liability for actions performed in their official capacity, state actors may still face liability for conduct performed in their personal capacity.  *See Kaul*, 372 F. Supp. 3d at 245; *see also Hof*, 2017 WL 3923296, at *4 (noting that "the Eleventh Amendment does not preclude suits brought against State officials in their individual capacities, even if the challenged conduct was part of their official responsibilities," and therefore "claims against [a defendant in his or her] individual capacity [will not be] . . . dismissed on this basis").  "Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law."  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  In determining

whether a state actor has been sued in his or her personal capacity or official capacity, courts "look to the complaints and the course of proceedings." *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990), *aff'd*, 502 U.S. 21, 31 (1991).  In such cases where a plaintiff asserts claims against defendants personally, defendants may raise individual defenses.  *Id.*

The TAC makes clear that Plaintiff is suing the various Defendants in their official capacities.  (*See, e.g.*, ECF No. 120 at 1, 7-9, 13-14, 18-21, 23-24, 29, 36).  However, to the extent Plaintiff does assert claims against Defendants in their personal capacity, Defendants are entitled to assert individual defenses, such as absolute prosecutorial immunity and qualified immunity. The Court finds that both immunities apply in this case.

### a. Absolute Prosecutorial Immunity

Plaintiff alleges that the MCPO Defendants conspired with the NJDOC to bring criminal charges without probable cause against Plaintiff.  (ECF No. 120 at 31.)  Prosecutors enjoy immunity from liability arising from a civil lawsuit for acts they take during their role as a prosecutor.  *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976) ("[A] prosecutor enjoys absolute immunity from § 1983 suits for damages when he acts within the scope of his prosecutorial duties."); *LeBlanc v. Stedman*, 483 F. App'x 666, 669 (3d Cir. 2012) (same).  To hold otherwise would diminish the public's trust of a prosecutor's office if he or she "were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages." *Imbler*, 424 U.S. at 424-25.

"[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."  *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).  This immunity includes, but is not limited to, acts such as collecting evidence, evaluating the collected

evidence, and failing to conduct an adequate investigation before filing charges. *Fuchs v. Mercer Cnty.*, 260 F. App'x 472, 475 (3d Cir. 2008) (citing cases). "[E]ven 'groundless charges' are protected. . . ." *Kulwicki v. Dawson*, 969 F.2d 1454, 1464 (3d Cir. 1992). When evaluating whether absolute prosecutorial immunity applies, courts should follow a functional approach and review the nature of the conduct rather than a person's status as a prosecutor. *Fogle v. Sokol*, 957 F.3d 148, 159 (3d Cir. 2020). Prosecutors may not enjoy immunity when they are performing investigative or administrative tasks such as giving advice to police during an investigation, making statements to the press, or when acting as a witness in support of a warrant. *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009).

Here, based on the allegations in Plaintiff's TAC, prosecutorial immunity bars the claims against Onofri, Galuchie, Newton, and Robeson for their decisions to charge and indict Plaintiff, as they were acting in their role as advocates for the State. *See Buckley*, 509 U.S. at 273. Moreover, Plaintiff fails to assert any allegations that Onofri, Galuchie, Newton, or Robeson were performing investigative or administrative tasks, which would prevent them from enjoying absolute prosecutorial immunity. *Fogle*, 957 F.3d at 159. There are no facts indicating that the MCPO Defendants were giving advice to a police officer during an investigation, making a statement to the press, or acting as a witness in support of a warrant application. *Id.* Instead, deciding whether to charge or indict an individual is part and parcel to a prosecutor's duties as an advocate of the State. As such, Onofri, Galuchie, Newton, and Robeson enjoy prosecutorial immunity for their alleged actions surrounding Plaintiff's criminal charge and indictment. *See Price v. Steinmetz*, Civ. No. 19-3225, 2020 WL 5039447, at *9 (E.D. Pa. Aug. 25, 2020) (finding that the prosecutor enjoyed absolute immunity after deciding to indict and prosecute an individual because "[t]he action of deciding to indict and prosecute an individual is a prosecutorial action and

24

as a result falls under the umbrella of quasi-judicial activities."). Therefore, Plaintiff's civil rights claims against the MCPO Defendants are dismissed with prejudice based on absolute immunity.

### b. Qualified Immunity

Next, the individual Defendants from the MCPO (Onofri, Galuchie, Newton, Robeson), HTPD (Kenna), New Jersey Treasury (Abidi and Hussain), and Attorney General's Office (Deputy Attorneys General Ward and Emery) argue that Plaintiff's TAC should be dismissed against them because they all enjoy qualified immunity. (ECF No. 127-4 at 35-38; ECF No. 128-1 at 18-20.) The Court agrees.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Schneyder v. Smith*, 653 F.3d 313, 331 (3d Cir.2011) (internal quotations and citations omitted). Moreover, "[q]ualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson,* 555 U.S. at 231. Qualified immunity aims to resolve "insubstantial claims" against government officials prior to discovery. *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987). It also protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citation omitted).

Qualified immunity applies to state officials unless a plaintiff pleads facts showing "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly

established' at the time of the challenged conduct." *Id.* at 735. The questions may be answered in either order. *Pearson*, 555 U.S. at 242.

"At the motion-to-dismiss stage, courts evaluate qualified immunity for a constitutional claim by examining (i) whether the complaint contains plausible allegations of a constitutional violation and (ii) whether the asserted constitutional right is clearly established." *Karkalas v. Marks*, 845 F. App'x 114, 118 (3d Cir. 2021).

Broadly construing Plaintiff's TAC, it appears that Plaintiff is arguing that her right to be free from an arrest, absent probable cause, was violated by the HTPD and MCPO Defendants. Plaintiff is correct in the sense that the Third Circuit clearly recognizes that an individual has "the right to be free from arrest except on probable cause." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d. Circ. 1995). However, "so long as the [official] has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his [or her] discretion." *Wayte v. United States*, 470 U.S. 598, 607, (1985) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). "Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." *Orsatti*, 71 F.3d at 482-483. Moreover, probable cause exists when the facts and circumstances are sufficient to warrant a reasonable person to believe that an unlawful offense has been or is currently being committed. *United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir.1990) (citation omitted). Reasonableness in the probable cause context is defined as whether "a reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he therefore should not have applied for the warrant under the conditions." *Orsatti*, 71 F.3d at 483. Therefore,

when an officer reasonably believes that his or her conduct complies with the law, qualified immunity shields the official from personal liability. *Pearson*, 555 U.S. at 244.

Plaintiff's conclusory allegation that a criminal investigation against her was unwarranted and lacked probable cause does not establish an absence of probable cause. (ECF No. 120 at 36-53.) First, Plaintiff fails to plead or articulate how probable cause did not exist. Second, Plaintiff fails to allege any facts to indicate that a reasonably well-trained officer or official would have known that probable cause did not exist, let alone that Onofri, Galuchie, Newton, Robeson, and Kenna knew that probable cause did not exist. Without allegations of this type, the aforementioned are all entitled to qualified immunity arising out of Plaintiff's criminal charge and indictment. Moreover, even if the Court were to construe Plaintiff's allegation as a claim for a reckless investigation, which it does not, the right to be free from a reckless investigation "has not yet been recognized" by the Third Circuit. *Kamienski v. Ford*, Civ. No. 11-03056, 2019 WL 4556917, at *13 (D.N.J. Sept. 17, 2019), *aff'd*, 844 F. App'x 520 (3d Cir. 2021) (citing *Geness v. Cox*, 902 F.3d 344, 354 n.5 (3d Cir. 2018)).

With respect to Deputy Attorney General Ward, Deputy Attorney General Emery, and employees Abidi and Hussain, Plaintiff similarly fails to articulate a well-established right that was violated by these Defendants. The only specific allegation Plaintiff makes against these Defendants is that they denied her worker's compensation and temporary disability benefits claims, thereby depriving Plaintiff of lawful compensation. (ECF No. 120 at 58-64). First, Deputy Attorney General Ward, Deputy Attorney General Emery, and employees Abidi and Hussain are state officials to whom qualified immunity applies.[15] Second, Plaintiff's conclusory statements

---

[15]    *See Walker v. Coffey*, 905 F.3d 138 (3d Cir. 2018) (applying qualified immunity to a deputy attorney general); *Waste Conversion, Inc. v. Sims*, 868 F. Supp. 643 (D.N.J. 1994) (applying qualified immunity to employees of the New Jersey Department of Treasury).

fail to identify a constitutional right that was clearly established. *See Janowski v. City of North Wildwood*, 259 F. Supp. 113, 122 (D.N.J. 2017) ("[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014))). Plaintiff must do more than simply allege that these Defendants deprived her of "lawful" compensation—she must plead facts demonstrating that their actions violated a statutory or constitutional right, and that the right was clearly established. *See Karkalas v. Marks*, 845 F. App'x 114, 118 (3d Cir. 2021); *see also Johnson v. Thompson-Smith*, 203 F. Supp. 3d 895, 905 (N.D. Ill. 2016) ("To have a property interest in a public benefit, a plaintiff must have 'more than a presumption that [she] is eligible for full benefits or a unilateral expectation of such an interest.'" (quoting *Escoe v. Shalala*, 842 F. Supp. 646, 651-52 (N.D.N.Y.1994), *aff'd*, 41 F.3d 1500 (2d Cir. 1994))).

For these reasons, Onofri, Galuchie, Newton, Robeson, Kenna, Ward, Emery, Abidi, and Hussain are entitled to qualified immunity. All claims against the aforementioned are dismissed with prejudice, as any further amendment would be futile for the same reasons previously discussed.

### C. MALICIOUS PROSECUTION

MCPO Defendants, HTPD, and Michael Keena next argue that Plaintiff's malicious prosecution claims should be dismissed. "To prove malicious prosecution under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiffs favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing a plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence

of a legal proceeding." *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003) (citation omitted). The Court finds that Plaintiff's malicious prosecution claims are barred pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994). Notwithstanding *Heck*, the Court further finds that Plaintiff has failed to plead sufficient facts to show that her state criminal proceeding was initiated without probable cause.

      The Court first addresses the *Heck* bar. Pursuant to *Heck*,

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

> [*Id.* at 486-87.]

Emanating from *Heck* is the principle that a plaintiff must have a "favorable termination" of his or her criminal proceedings before bringing a lawsuit for an unconstitutional conviction or imprisonment. *Id.* This is because "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Wallace v. Kato*, 549 U.S. 384, 392 (2007) (quoting *Heck*, 512 U.S. at 486). The United States Supreme Court went one step further in *Wilkonson v. Dotson* and applied *Heck* to equitable relief if the requested relief would expressly or implicitly invalidate the underlying criminal conviction. 44 U.S. 74, 81-82 (2005); *Bressi v. Brennen*, 823 F. App'x 116, 119 (3d Cir. 2020) ("Under *Heck*, where success in a § 1983 action would necessarily imply the invalidity of a conviction or sentence, an individual's suit for damages or equitable relief is barred unless he can demonstrate that his conviction or sentence has been invalidated.").

Here, Plaintiff has not asserted any allegations in the TAC suggesting that she received a favorable termination that would entitle her to monetary or equitable remedies due to the alleged unconstitutional conviction (guilty plea). Specifically, Plaintiff does not allege that her guilty plea was reversed on appeal, expunged by an executive order, declared invalid by an authorized court, or called into question by a federal court issuing a writ of habeas corpus. *Heck*, 512 U.S. at 486-87. Instead, the TAC makes clear that Plaintiff pled guilty to second degree unlawful possession of a handgun. (ECF No. 127-7.[16]) "Having compromised for [her] peace in the criminal proceeding," Plaintiff "may not later contend that the proceedings terminated in [her] favor." *Ferry v. Barry*, Civ. No. 12-009, 2012 WL 4339454, at *6 (D.N.J. Sept. 19, 2012) (quoting *Mondrow v. Selwyn*, 412 A.2d 447, 450 (N.J. Super. Ct. App. Div. 1980)).

Plaintiff asserts that her state criminal charges were referred to PTI (ECF No. 120 at 34, 51, 69), and that PTI constitutes a favorable termination (*see* ECF No. 160 at 5-6). On June 16, 2024, the State filed a letter with the Court indicating that Plaintiff successfully completed PTI and that Plaintiff's state criminal charges were subsequently dismissed.[17] (*See* ECF No. 159).

---

[16]    Although the Court may typically only consider the allegations in a pleading, and the exhibits attached, the Court may consider information arising from a "public record" in certain situations. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993). Here, Plaintiff's criminal complaint, indictment, and guilty plea are a matter of public record, and thus, the Court is permitted to consider them. *Id.* ("Courts have defined a public record, for purposes of what properly may be considered on a motion to dismiss, to include criminal case dispositions such as convictions or mistrials[.]").

[17]    The Court may properly consider the State's June 16, 2024 letter at this stage. At the motion to dismiss stage, courts "may consider 'a document integral to or explicitly relied upon in the complaint,' without converting the motion to dismiss into a motion for summary judgment." *Smith v. Antares Pharma, Inc.*, Civ. No. 17-8945, 2019 WL 2785600, at *7 (D.N.J. July 2, 2019) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Here, the TAC specifically pleads that Plaintiff's state criminal case resulted in PTI. (*See* ECF No. 120 at 34, 51, 70.) Therefore, the Court finds that the State's letter advising the Court as to the final disposition of Plaintiff's PTI is integral to the TAC, especially where Plaintiff does not dispute—and indeed confirmed—that her PTI is complete.

Plaintiff responded to the States' letter and confirmed that her state criminal case was now disposed of pursuant to PTI. (*See* ECF No. 160) (noting that Plaintiff entered into the "N.J. pretrial intervention diversionary program, that resulted in . . . a term of thirty-six months" which "terminated on April 16, 2024, as now disposed of"). Plaintiff's PTI argument lacks merit because the successful completion of the New Jersey PTI program does not constitute a "favorable outcome" for the purpose of a malicious prosecution claim. *See Fernandez v. City of Elizabeth*, 468 F. App'x 150, 154-55 (3d Cir. 2012) (finding "that the District Court did not err in ruling that [the plaintiff's] participation in the PTI program, and the subsequent dismissal of the charges against him was not a favorable termination); *Brookman v. Twp. of Hillside*, Civ. No. 09-02178, 2019 WL 3297300, at *6 (D.N.J. July 23, 2019) (noting that "entry into PTI bars [a] malicious prosecution claim under *Heck*"); *see also Bustamante v. Borough of Paramus*, 994 A.2d 573, 580 (N.J. Super. Ct. App. Div. 2010) ("Our federal district court has held that dismissal of criminal charges through PTI is not a favorable disposition for purposes of a malicious prosecution suit brought under § 1983." (citing *Lindes v. Sutter*, 621 F. Supp. 1197, 1201-02 (D.N.J.1985))).

Plaintiff further argues that the Supreme Court's recent decision in *Thompson v. Clark*, 596 U.S. 36 (2022), supports the position that her completion of PTI was a favorable termination for purposes of a malicious prosecution claim. (*See* ECF No. 160 at 5-6.) The Court disagrees. In *Thompson*, the Supreme Court determined that "[t]o demonstrate a favorable termination of a criminal prosecution for purposes of [a] Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." *Thompson*, 596 U.S. at 39. While *Thompson* appears to broaden the scope of scenarios where a litigant can assert a malicious prosecution claim, the Supreme Court's ruling did not address pre-

trial diversionary programs,[18] nor has the Third Circuit applied *Thompson* to diversionary programs.  The Court is not inclined to do so here.

Diversionary programs, such as New Jersey's PTI program, are special programs that "allow prosecutors wide latitude in deciding whom to divert into the PTI program and whom to prosecute through a traditional trial."  *State of New Jersey v. Negran*, 835 A.2d 301, 306 (2003).  After a prosecutor and defendant reach an agreement, a diversionary program will hold a criminal defendant's matter in abeyance while said defendant completes a probationary period.  *See State of New Jersey v. Castaldo*, 638 A.2d 845, 849 (N.J. Super. Ct. App. Div. 1994).  These programs can be highly punitive, such as requiring fines or restitution, lengthy periods of probation, the entering of guilty pleas, and other conditions a prosecutor deems appropriate.  *See also Fernandez*, 468 F. App'x at 154.  But, if a defendant successfully completes PTI, he or she will avoid a criminal conviction.  *See also State v. Allen*, 786 A.2d 903, 907 (N.J. Super. App. Div. Ct. 2001).  Therefore, to hold that diversionary programs, such as New Jersey's PTI program, constitute a "favorable termination" for purposes of malicious prosecution claims would place prosecutors in the untenable position of having to choose between a defendant's rehabilitation and a prosecutor's own civil liability.  *See also Imbler*, 424 U.S. at 424-25 (noting that "the public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages").  Therefore, the Court concludes that *Heck* bars Plaintiff's malicious prosecution claim.

---

[18]    The survey of decades of precedent in *Thompson* focused on cases with facts distinguishable from this matter—such as an unexplained dismissal of a defendant's criminal charges, a prosecutor that voluntarily dismissed charges, a jury that rendered a not-guilty verdict, and an appellate court that overturned a defendant's conviction—as opposed to cases addressing diversionary programs.  *Thompson*, 596 U.S. at 44-48.

Notwithstanding the *Heck* bar, the Court also finds that Plaintiff has not sufficiently pled facts in the TAC to show a lack of probable cause. As previously explained, Plaintiff has not articulated how probable cause did not exist. Nor has she alleged facts to indicate that a reasonably well-trained officer or official would have known that probable cause did not exist, let alone that Onofri, Galuchie, Newton, Robeson, and Kenna knew that probable cause did not exist when Plaintiff was arrested. (*See* ECF No. 128-5 (certification of probable cause[19]).)

Because Plaintiff cannot show that her criminal prosecution resulted in a favorable termination or a lack of probable cause, the Court finds that Plaintiff's lawsuit against the MCPO Defendants, HTPD, and Kenna is an attempt to undermine the validity of her guilty plea. Although courts typically dismiss malicious prosecution claims without prejudice in the event that the termination of criminal proceedings later become favorable on appeal, the Court finds that any further amendment would be futile.[20] *See Williams v. Healy*, Civ. No. 08-2389, 2009 WL 1307239, at *3 (D.N.J. May 5, 2009) (dismissing the plaintiff's malicious prosecution claim with prejudice because any further amendment would be futile since the plaintiff could not show a favorable termination). Thus, the Court dismisses Plaintiff's malicious prosecution claims with prejudice.[21]

---

[19]    The certification of probable cause is a component of a criminal complaint in New Jersey. Because Plaintiff's complaint is a public record, the Court may consider it. *See Pension Ben. Guar. Corp.*, 998 F.2d 1197.

[20]    Nothing in the New Jersey Court Rules "allows a defendant to appeal a decision where a prosecutor consented to or recommended enrollment in a PTI program." *See State of New Jersey v. Sexton*, 2024 WL 302880, at *2 (N.J. Super. Ct. App. Div. 2024).

[21]    To the extent that Plaintiff raises an unlawful arrest claim, Plaintiff cannot satisfy the probable cause prong, and therefore those claims must be dismissed with prejudice. To bring a claim for unlawful or false arrest, a plaintiff must establish "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012). As addressed herein, Plaintiff has not pled sufficient facts to show a lack of probable cause. Therefore, any attempt to raise an unlawful arrest claim is futile.

### D.  INJUNCTIVE RELIEF

Plaintiff also appears to seek injunctive relief, (ECF No. 120 at 70), which Defendants oppose, (ECF No. 127-4 at 38-40).

The *Ex parte Young* decision provides an exception to Eleventh Amendment immunity where, "in certain circumstances, a plaintiff may bring a federal suit against state officials."  *Del. River Joint Toll Bridge Comm'n v. Sec'y Pa. Dep't of Labor & Indus.*, 985 F.3d 189, 193 (3d Cir. 2021) (citing *Ex parte Young*, 209 U.S. 123 (1908)).  This exception "requires [the Court] to 'conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law' and whether it 'seeks relief properly characterized as prospective.'"  *Id.* at 193-94 (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).  A plaintiff may not invoke this exception when seeking an award of damages or any other form of retroactive relief.  *See Blueprint Capital Advisors, LLC v. Murphy*, Civ. No. 20-07663, 2022 WL 17887229, at *11 (D.N.J. Dec. 23, 2022) ("The relief sought must be prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective, such as money damages that must be paid from public funds in the state treasury.").

Here, Plaintiff fails to plausibly allege an ongoing violation of federal law.  Like in her earlier pleadings, Plaintiff's grievances in the TAC stem from Defendants' criminal prosecution of Plaintiff and allegations that her worker's compensation and temporary disability benefits were denied.  The Court does not have the power to issue retroactive relief.  *Blueprint Capital Advisors, LLC*, 2022 WL 17887229, at *11.  To the extent that Plaintiff is requesting that the Court issue an injunction for future conduct, this remedy is "unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a 'likelihood of substantial and immediate irreparable

injury.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (citation omitted). Plaintiff does not allege any "real or immediate threat" that she will be wronged again. *Id.* Because Plaintiff has been unable to cure the deficiencies in her claim for injunctive relief upon multiple amended pleadings, the Court finds that any further amendment would be futile and dismisses Plaintiff's claim for injunctive relief with prejudice.

### E. STATE LAW TORT CLAIMS

Plaintiff makes multiple references to state law tort claims such as civil conspiracy, emotional distress, personal injury, and property damage throughout the TAC.

Pursuant to the New Jersey Tort Claims Act (NJTCA), prior to asserting a tort claim against a public entity for "death or for injury or damage to person or to property," the plaintiff must file a notice within ninety days of the accrual of the claim. N.J. Stat. Ann. § 59:8-8. "Failure to meet the ninety-day deadline for service of a Tort Claims Act notice of claim ordinarily results in a severe penalty: '[t]he claimant shall be forever barred from recovering against [the] public entity.'" *McDade v. Siazon*, 32 A.3d 1122, 1130 (N.J. 2011) (quoting N.J.S.A. 59:8–8). The plaintiff bears the burden of proving that a notice of claim was filed with the public entity. *Hammond v. City of Paterson*, 368 A.2d 373 (N.J. Super. Ct. App. Div. 1976). Despite the Court noting this deficiency in its previous Opinion, Plaintiff neither attaches a notice of claim to her pleadings, nor alleges that she filed a claim notice or even a late notice under N.J. Stat. Ann. § 59:8-9. *See Sexton*, 2023 WL 8868810, at *12 n.23. And although state tort claims are subject to equitable tolling, *see Lloyd v. Ocean Twp. Council*, Civ. No. 19-600, 2019 WL 4143325, at *5-7 (D.N.J. Aug. 31, 2019), Plaintiff has not provided sufficient justification warranting tolling for the reasons previously outlined. Therefore, Plaintiff's alleged tort claims against the State entities are dismissed with

prejudice because any further amendment would be futile. *Baldeo v. City of Paterson*, Civ. No. 18-5359, 2019 WL 277600, at *8 (D.N.J. Jan. 18, 2019).

### F. PUNITIVE DAMAGES AGAINST PUBLIC ENTITY

Plaintiff also seeks punitive damages against all Defendants. (ECF No. 68-69). However, pursuant to N.J. Stat. Ann. § 59:9-2(c), "no punitive … damages shall be awarded against a public entity." Therefore, Plaintiff's claim for punitive damages against the NJDOC Defendants, the MCPO Defendants, and the HTPD cannot stand. *See Gardner v. New Jersey State Police*, Civ. No. 15-8982, 2017 WL 2955348, at *4 (D.N.J. July 11, 2017) ("[P]unitive damages are not available against municipal entities under the NJTCA, NJCRA, and § 1983.").

### G. CLAIMS AGAINST CBIZ DEFENDANTS

Plaintiff also appears to assert a claim against CBIZ Defendants for their supposed relationship with the NJDOC Defendants and Treasury Defendants. (ECF No. 120 at 54-58.) Noted above, Plaintiff is proceeding *pro se* and Courts are to liberally construe *pro se* complaints. *Alston*, 363 F.3d at 234. "Liberal construction does not, however, require the Court to credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs*, 984 F. Supp. 2d at 282 (citation omitted).

It is unclear what cause of action Plaintiff asserts against the CBIZ Defendants. Liberally construed, the TAC appears to assert a claim for civil harassment against the CBIZ Defendants. Under New Jersey law, civil harassment is not a cause of action. *Hodge v. McGrath*, Civ. No. 4684-12T2, 2014 WL 6909499, at *1 (N.J. Super. Ct. App. Div. Dec. 10, 2014) ("Plaintiff's civil harassment claim was properly dismissed because New Jersey law has not recognized harassment as a free-standing civil cause of action for damages.").

To the extent Plaintiff is asserting an IIED claim against CBIZ Defendants, an IIED claim has a two-year statute of limitations pursuant to N.J. Stat. Ann. 2A:14-2.  *Fraser v. Bovino*, 721 A.2d 20, 25 (N.J. Super. Ct. App. Div. 1998).  Plaintiff's claim against CBIZ stems from alleged "torturous conduct" on February 5, 2019, and her subsequent involuntary hospitalization from February 12, 2019 to March 4, 2019.  (ECF No. 120 at 54-55.)  At the latest, the statute of limitations expired on March 4, 2021, but Plaintiff did not file the Complaint until December 8, 2021.  Accordingly, Plaintiff's potential IIED claim would be time-barred.[22]  This is so even though Plaintiff attempts to extend the violation period to January 2023.  (ECF No. 120 at 54.)  Plaintiff has provided no additional facts to support the extended violation period.  (*See* ECF No. 120 at 54-58 (alleging facts to support violations only between February to March 2019, and not through January 2023); *cf. Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (finding that the plaintiff properly alleged at least one act that fell within the statute of limitations period, and therefore could proceed under a continuing violation theory).

Finally, Plaintiff alleges that CBIZ violated her federal civil rights.  (ECF No. 120 at 58.)  Plaintiff's civil rights claims fail because she has not sufficiently pled facts that the CBIZ Defendants are state actors, and therefore subject to suit under § 1983.  "[A] private party may be liable under § 1983 when the private-party defendant deprived the plaintiff of a constitutional right by exercising a right or privilege having its source in state authority and where the private-party defendant may be appropriately characterized as [a] state actor[ ]."  *Diamond v. Pa. State Educ.*

---

[22]    The TAC appears to have abandoned the claim for invasion of privacy asserted in Plaintiff's prior pleadings.  Even if Plaintiff had preserved her invasion of privacy claim from the Second Amended Complaint, she has not corrected the timeliness defects the Court identified in its prior Opinion.  *See Sexton*, 2023 WL 8868810, at *13.  Thus, any invasion of privacy claim would be dismissed with prejudice.  *See Atkinson*, 473 F.3d at 517 (noting that claims from a prior complaint may only be preserved if it would not be futile to replead such claims).

*Assoc.*, 972 F.3d 262, 269-70 (3d Cir. 2020) (internal citations and quotations omitted). Here, Plaintiff appears to allege that the CBIZ Defendants were working with the NJDOC Defendants and Treasury Defendants. (ECF No. 120 at 54-58.) Specifically, the CBIZ Defendants "were assigned to investigate the NJ [S]tate workers compensation case" between February 5, 2019, to November 3, 2019. (*Id.*) Further, Plaintiff asserts that the CBIZ Defendants harassed and intimidated her through "torturous conduct . . . [which] further exasperated [Plaintiff's] permanent work injury." (*Id.* at 54-55.) However, these bare allegations and conclusions, without more, are insufficient to show that the CBIZ Defendants are state actors.

Even accepting Plaintiff's allegations as true, and drawing all reasonable inferences in favor of Plaintiff, she has not shown that the CBIZ Defendants deprived her of a constitutional right. Therefore, because Plaintiff cannot show that the CBIZ Defendants were state actors, or that they deprived her of a constitutional right, her § 1983 claims must be dismissed. *See Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) ("[T]o state a claim of liability under § 1983, [a plaintiff] must allege that she was deprived of a federal constitutional or statutory right by a state actor.").

Moreover, as discussed earlier, "[t]here is a two-year statute of limitations for claims brought under § 1983." S*ears*, 2022 WL 951367, at *3 (citation omitted). The claim begins to accrue when the "plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." *Montgomery*, 59 F.3d at 126 (citation omitted). Plaintiff alleges that she was hospitalized from February 12, 2019, through March 4, 2019, due to "named defendants," which CBIZ allegedly "act[ed] on the behalf of." (ECF No. 120 at 58.) Based on the TAC, Plaintiff either knew or had reason to know of the alleged injury by March 4, 2019, at the latest, as CBIZ's alleged conduct caused the hospitalizations. Because the case was not filed within the

two-year statute of limitations period, Plaintiff's § 1983 claim against CBIZ Defendants is dismissed.[23]

Therefore, based on the foregoing, all claims against the CBIZ Defendants are dismissed with prejudice because any further amendment would be futile.

**IV.    CONCLUSION**

For the reasons stated above, and for other good cause shown, Defendants' Motions to Dismiss (ECF Nos. 125, 126, 127, 128) are **GRANTED**.  Plaintiff's TAC is **DISMISSED WITH PREJUDICE**.  An appropriate Order follows.

Dated: October 30, 2024

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

---

[23]    For the reasons previously outlined, Plaintiff is not entitled to equitable tolling of the statute of limitations period for claims against the CBIZ defendants.